## COOL'S EXECUTORS *vs.* HIGGINS and others.

1. Under peculiar circumstances, the amount of certain encumbrances which were upon lands sold under the act "to authorize the sale of lands limited over to infants, or in contingency, in cases where such sale would be beneficial," and clear of which they were sold by the master, allowed out of the proceeds of sale.

2. Executors suing for legacies charged upon land, after the estate has been settled, and having no interest whatever in the legacies, cannot maintain the suit without joining the legatees, as complainants with them.

Leonard C. Cool, by his will dated December 19th, 1860, and proved on the 24th of May following, after directing payment of his debts and funeral expenses, gave to William Davis $100, and to David Deats and Leonard Cool Davis $50 each, these legacies, however, were not to be paid in ten years unless the proceeds of his farm, over and above keeping up the repairs, farming utensils, and stock, and the support of his wife and his two children, should be sufficient to pay them, but were to be paid whenever the surplus should be sufficient for the purpose. To his two daughters, Anna and Mary, the children above mentioned, he gave all his property, subject to the charges and restrictions thereinafter mentioned, for life, with remainder in fee to their lawful issue (who were to take *per stirpes*,) or, if only one of his daughters should leave lawful issue, to such issue in fee, on the death of the survivor of his daughters. In the event of the death of both of his daughters without leaving lawful issue, the

property, subject to the charges and provisions before referred to, was to go to his brother Andrew and his sisters Mary Ann and Margaret, and the survivors and survivor of them, in fee. To keep a home for his family, he directed that his wife and daughters should occupy his farm and share equally in its produce and proceeds, each to have a third of the surplus during life, subject to the provisions before alluded to, but if either of his daughters should leave the homestead, she was to receive only a third of the surplus after the support and clothing of her mother and sister should have been taken out. Out of the proceeds of the farm, as a common fund, they were to keep up the property as well in implements and stock, as in buildings, fences, &c. They were not to encumber that property, but in case of the destruction of the buildings by fire or other misfortune, which would make it necessary to raise money, or if it should be necessary to raise money for their support, they were to mortgage two lots of land which he designated for the purpose. The will declared that this provision for his wife was in lieu of dower. It provided that if his wife should re-marry, she should, in lieu of the provision made for her as above stated, only be allowed the property she brought him, and an annuity of $50 for fifteen years after her re-marriage ; the annuity to cease, however, on her death, before the expiration of that period. The testator directed that the lot owned by him in the burying ground, at Larison's corner, should be enclosed by his executors, with a neat and substantial fence, to be made in whole or in part of iron, and that the lot be kept up in a neat, tasteful, and ornamental manner. The will charges the testator's estate with the payment of the legacies, expenses, and whatever may be needed for the purpose of carrying out the will.

On the 27th of November, 1867, the real estate of the testator was sold at public auction, by the order of this court, under and by virture of proceedings under the act "to authorize the sale of lands limited over to infants, or in contingency, in cases where such sale would be beneficial," and was then purchased by the defendant, Nathaniel Higgins, at

the price of $17,020.58. The sale having been confirmed, a deed of conveyance in fee simple was made to him, pursuant to the order of this court, on the 28th of March, 1868, and the money paid into court. On the 7th of August, 1872, the surviving executors filed their bill against Higgins and the persons other than the legatees interested in the fund, to compel payment of the legacies and the amount necessary to build the fence around the cemetery lot, and to put and keep the lot in order, according to the directions of the will in that behalf. The personal estate, except an insignificant balance, was exhausted in the payment of the debts and funeral and testamentary expenses.

The cause was argued on final hearing, upon the pleadings and proofs.

*Mr. G. A. Allen,* for complainants.

*Mr. A. Wurts,* for defendant, Higgins.

THE CHANCELLOR.

This case was before this court in 1873, upon a general demurrer, filed by the defendant, Higgins, to the bill of complaint. *Cool's Executors* v. *Higgins,* 8 *C. E. Green* 309. The late Chancellor there held that the executors could maintain the suit for the recovery of the money requisite to enable them to comply with the direction of the will in respect to the cemetery lot, but expressed no opinion as to whether they could maintain it so far as the legacies due to the respective legatees are concerned. He held that Higgins purchased the land subject to the encumbrances on it. It now clearly appears, that at the sale under the act " to authorize the sale of lands limited over to infants, or in contingency, in cases where such sale would be beneficial," the master, prior to setting up the property, publicly proclaimed to the bidders and to all who were in attendance, that the premises would be sold free and discharged of all liens, charges, and encumbrances

thereon, under or by virtue of the will. All the persons in being, who were interested in the property, were parties to the proceedings under the act, and were duly brought in under them. The solicitor of the petitioner therein, (the petitioner was one of the life tenants,) assured Higgins at the sale, and before he purchased, that the land was to be sold free of all encumbrances, and the husband (a lawyer) of the other life tenant gave him the same assurance at the same time. Higgins, relying on these representations and assurances, bid for and purchased the property, and paid the purchase money and took his deed, accordingly.

That he would, under the circumstances, have been relieved from his purchase, on application in due time, on the ground of mistake arising from the proclamation and assurances referred to, there can be no doubt. That he made no application was due to his confidence in them. The bill in this cause was not filed until over four years after his deed was delivered to him. All those who are interested under the devise, except the legatees, are parties to this suit. The fund derived from the sale was brought into court. The late Chancellor, in the order fixing the allowance to the owners of the particular estate, provided for the payment out of the interest, of the legacy of $50 a year, for fifteen years, given to the testator's widow by the will, in the event of her re-marriage. By decree of May 9th, 1871, he set apart a part ($86.10) of the annual interest of the fund for accumulation, for the benefit of those in remainder. The owners of the property have had the benefit of a sale of the premises free of the encumbrances in question in this suit, and the fund in court is correspondingly greater, accordingly.

This fact did not appear in the case when it was before the late Chancellor. The conclusion at which I have arrived depends on the peculiar circumstances of this case, and does not, therefore, militate against the doctrine expressed in his opinion, that the purchaser at such a sale buys, subject to existing encumbrances. The payment to the testator's widow of the annuity above referred to, out of the fund in court,

was, it may be observed, in conflict with that opinion. It appears to me clear, that as between Higgins and the fund, the equities are all in favor of the former. There can be no equity in compelling him, under the circumstances, to pay the money charged on the land. The fund should pay it.

It was objected on the hearing, that the executors were not entitled to a decree as to the legacies to William Davis, David Deats, and Leonard C. Davis. The bill alleges that the legatees look to and call upon the executors for payment. The executors, therefore, may be regarded as filing the bill as trustees for the legatees. But, if so, the legatees should have been made complainants, with the executors. They are not parties to the suit. The estate has been settled so far as payment of the debts is concerned, and all the personal estate has been administered, except a balance of $20.69, remaining in the hands of the executors. The executors have no interest in those legacies. They therefore file their bill as to them as mere naked trustees. It does not appear, except from the statement of the bill above mentioned, that the legatees have authorized them to collect their legacies, or that they are desirous that they should be collected. The cause must stand over until the necessary amendment be made by making the legatees, parties complainant. *Fish* v. *Howland*, 1 *Paige* 20. When that shall have been done there will be a decree directing the payment of the legacies out of the fund, and for a reference to ascertain the amount due on the legacies, and the amount requisite to be paid to the executors to answer the directions of the testator in respect to the lot in the cemetery, (the testimony on this head not being explicit enough to warrant a decree without a reference,) and also to ascertain the proportions in which those amounts should be borne by the estates for life and in remainder, respectively.