## ELMER, trustee, *vs.* LOPER and others.

1. *Cestui que trust* should be joined with trustee in a suit for the recovery of property belonging to the former.

2. Where *cestui que trust* was made a defendant in such a suit, an amendment was ordered at the hearing, striking him out as defendant and making him a complainant.

3. A mortgagee in possession will not be allowed compensation for his trouble in taking care of the estate.

4. A trustee who brings into court an account of his dealings with the trust estate, manifestly unworthy of credit, is not entitled to compensation for his management of the trust property.

5. Where a mortgagee or trustee has so intermingled the trust property with his own, that it is impracticable to ascertain how much of certain charges, such as taxes levied upon the whole property, ought to be borne by the trust estate, he is entitled to no allowance in respect to such charges.

6. Directions for taking an account between mortgagor and mortgagee in possession.

On final hearing on pleadings and proofs.

*Messrs. Potter* and *Nixon*, for complainant.

*Mr. F. F. Westcott*, for Loper.

THE CHANCELLOR.

Charles Garrison, deceased, late of the county of Cumberland, in this state, by his will, proved in 1843, gave to · Lucius Q. C. Elmer, one of his executors, $4000, in trust, to put and keep that sum at interest and pay the interest annually, after deducting $20 a year for his compensation, to the testator's adopted son, Charles Garrison Ireland, one of the defendants in this suit, until he should arrive at the age of forty years, and then to pay the principal to him. There was also a residuary bequest of personal estate to Ireland. The testator, also, by the will, after devising a certain farm · to Lydia Tice, gave all the residue of his land and real estate to Ireland and the heirs of his body; Ireland, during his lifetime, to use the same and cut the wood and timber as if he were the owner of it in fee simple. In 1852, Ireland, being in want of money and being pressed by a judgment creditor, one Otterson, applied to the defendant, Dr. James Loper, for pecuniary aid in the premises. The latter, at that time, held a mortgage for $400 and interest, given to him by Ireland, on part of the property, the Deerfield farm, devised to the latter by the above mentioned will; and on the same property, one J. C. Drake also held a mortgage for $325.65, besides interest. Ireland was also indebted to Loper in the sum of $200, which the latter had lent him. The result of Ireland's application to Loper was the following letter, written by the latter to the former, and dated December 13th, 1852: "I am at a loss to know what to say to you in regard to our business. I find upon examination, that the debts bearing on your property, exclusive of McIwall's, will amount to something over $2300. The money you owe Drake will have to be secured by me, in case you make me a deed of trust

according to my proposition. That, of course, will be the great *sine qua non* of the transaction. My proposition to you will be, to add to Otterson's debt and cost, my own debt and per centage, according to my first arrangement with you (or rather your own arrangement with me,) add Drake's amount of debt and cost, tax, life insurance, &c., and give me a deed for all your property and pay me twelve per cent. for the whole amount of the debt, &c., until paid off. Every cent that I can collect from the proceeds of your property, shall strictly be kept and applied to your own account, after deducting my interest, tax, &c., which you know will necessarily have to be paid. You will readily perceive that all these bills will amount to something over $276, much more than the rent of the Deerfield farm, together with what small amount of rent can be made at Millville; therefore, I see no other way than for you to order paid to me, the money from Elmer, otherwise there will not be enough paid to me to keep the debt from accumulating in my hands. Now, I want you to think of the matter, and if you can do any better than I offer, to do so, for that is the best that I can do, and even that I would rather not do. I can get as good as that for my money and have the assurance that it will be paid to me at any time, on three months' notice. If you accede to my proposal, you can get your life insurance for the above amount, and bring it down, together with your deeds, &c., and I will draw the new ones to me, at my leisure time. I can do it as well as any one and save cost." This letter was followed by an agreement, under seal, made between Loper and Ireland, whereby it was witnessed that the latter, for the consideration of $2364.25, conveyed to the former, by deeds of even date with the agreement, ten different tracts or pieces of land, with all the improvements thereon, together with all the lands belonging to Ireland in this state, and that Ireland covenanted and agreed with Loper, his heirs and assigns, that Loper should peaceably hold and use those lands, together with all the improvements thereon, the same as if the lands were, to all intents and purposes, his, and to remain his for-

ever ; that all the rents, profits and interest arising from the proceeds of the lands, were to be appropriated to the payment of the above mentioned debt, after deducting the necessary taxes, repairs and life insurance, and twelve per cent. interest for the use of the money. And Ireland thereby agreed to pay or order to be paid to Loper, all the interest due and becoming due yearly on $4000, then in the hands of L. Q. C. Elmer, after deducting Mr. Elmer's fee of $20 a year, and the tax on the sum, and that he, Ireland, would not do, or at any time cause to be done, anything to prevent Loper from collecting the interest, under penalty of forfeiture of the whole lands. And Loper thereby agreed to apply the residue, after the above deductions should have been made, to the payment of the above mentioned debts, until all of those debts should be paid off, unless Ireland, his heirs or assigns, should well and truly pay to Loper the whole amount before those debts should have been paid by such application. And it was thereby declared that he or they should have a right to pay off the debts at any time. And it was thereby further agreed that whenever the sum of money therein above mentioned, should have been paid, together with all the expenses of tax, life insurance, interest, repairs, &c., then the above mentioned deeds of conveyance as well as all possession, should be at once given up to Ireland, his heirs and assigns. At the time of executing this agreement, Loper produced to Ireland, the following statement of the indebtedness which the arrangement was intended to secure :

Charles G. Ireland in account with Dr. James Loper.

December 24th, 1852.

| | |
|---|---|
| Mortgage on Deerfield farm.......... ......... ......... | $400 00 |
| 2½ p. c. per mo. int. from Oct. 5th, 1851, to Dec. 24th, 1852......... . ........ ......... ......... ............. | 146 64 |
| Cash, borrowed on lease of J. Casper, assigned to J. Loper....... ...... ...... ...... .......... ...... ......... | 100 00 |
| 2½ p. c. per mo., with 6 p. c. per an. added, from Aug. 22d, 1851, to Dec. 24th, 1852 ......... ...... | 48 00 |
| Cash borrowed on lease, as aforesaid,....... .......... | 100 00 |

Elmer *v.* Loper.

| | | |
|---|---:|---:|
| 2½ p. c. per. mo., with 6 p. c. per an. added, from Sept. 16th, 1851, to Dec. 24th, 1852 | $46 | 00 |
| Principal and interest of Otterson's claim to Dec. 24th, 1852 | 1,144 | 30 |
| Sheriff's cost, as far as heard from | 31 | 40 |
| | $2,016 | 34 |
| Mortgage on Deerfield farm to J. C. Drake | 325 | 68 |
| Int. from April 16th, 1852, to Dec. 24th, 1852, 8½ months | 13 | 52 |
| | $2,355 | 54 |
| Tax on C. G. Ireland's property in Millville township, for the years 1851–52 | 36 | 75 |
| | $2,392 | 29 |
| Cash received of J. Casper | 28 | 04 |
| | $2,364 | 25 |

Simultaneously with the execution of the agreement, Ireland executed and delivered to Loper three deeds, purporting to convey to him, in fee simple, the land devised to Ireland by the will above mentioned, and he also then executed and delivered to Loper a letter of attorney, authorizing and empowering him to demand, sue for and receive for Ireland and to his use, all debts, dues and demands whatsoever, which were due, and owing to Ireland, or which might become due to him at any future day, or which then, of right, belonged to him, or which, at any future time, should belong to him. Under this arrangement Loper entered into possession of the real property described in the deeds, and, from thence until the filing of the bill, took to his own use the rents and profits thereof. He also sold wood, timber and hoop poles off the premises, and applied to his own use the money received therefrom. He also collected the interest on the legacy of $4000, up to the time when Ireland attained to the age of forty years, when the latter became entitled to the principal. Besides the money mentioned in the written agreement, Loper,

subsequently to the making of that instrument, advanced various sums to Ireland, which were to be repaid out of the principal of the legacy of $4000. Of the principal of that legacy Loper received $1000, on 7th of December, 1860, and $620 on the 8th of April, 1861. Ireland, on the 3d of November, 1871, executed a deed conveying the lands, which had been conveyed to Loper, to the complainant, Elmer, in trust to take proceedings to obtain an account and settlement from Loper, and payment of the money justly due Ireland from him, and a conveyance of the lands to Elmer for Ireland's benefit. The trust is set out in the bill. The bill is filed by Elmer, as trustee, against Loper and Ireland. It prays an account from Loper, and conveyance to Elmer, as trustee of the lands conveyed by Ireland to Loper.

It is insisted by the counsel of Loper that this action cannot be maintained by Elmer alone, and that Ireland should have been joined with him as complainant. This objection was made, for the first time, at the hearing, and after the merits of the case had been disclosed. It cannot prevail. Ireland is a party to this suit. No relief is prayed or sought against him. The suit is prosecuted for his benefit. He has not answered, but was a witness for complainant. He was present at the hearing. He should have been made complainant with his trustee. The complainant will be permitted to amend by making him a party complainant, and striking out his name as defendant. *Malin* v. *Malin*, 2 *Johns. Ch. R.* 238; *Kirk* v. *Clark, Prec. in Chan.* 275.

The conveyance, by Ireland to Loper, was manifestly merely a mortgage to secure to the latter the money mentioned in the written agreement, with the interest thereby made payable. It is claimed by Loper, and I think with reason, that, by the subsequent verbal agreement of the parties, the conveyance was to stand as security for the subsequent advances. The complainant is entitled to the account for which he prays. Loper insists that in the account he is to be allowed reasonable compensation for his trouble in taking care of the mortgaged premises, collecting the rent and superintending

repairs, etc., and he testifies and produces another witness to the same point, that it was agreed between him and Ireland, that he should have, for such compensation, a sum equal to six per cent. a year on the amount of his debt. The agreement under seal makes no provision for compensation. It does provide for the payment, by Ireland to Loper, of interest at the rate of twelve per cent. per annum on the mortgage debt. Loper attempts to show that this was a mistake, attributable to his want of knowledge of language, or of the appropriate use of terms, and that the intention of the parties was, that only six per cent. interest should be paid, and that the rest of the twelve per cent. was to be his compensation. But, in the first place, the agreement is clear and explicit in its language, and parol evidence cannot be received to explain it. The language is, " twelve per cent. interest for the use of the money." There is no evidence of any mistake, whatever, on this head. That the agreement between Ireland and Loper was, that the latter should receive twelve per cent. per annum for the mortgage debt, is unquestionable. In his letter of December 13th, 1852, written only a few days before the date of the agreement, Loper expressly and explicitly makes it part of his proposition, that Ireland shall pay him twelve per cent. for the whole amount of his debt, until it should be paid off. The statement given by him to Ireland, at the time of the execution of the agreement, throws some light on this matter. He there charges thirty per cent. a year on the mortgage he held on the Deerfield farm, and thirty-six per cent. a year on the other money lent by him to Ireland, up to the date of the agreement. He had not then been in possession of the property, nor had he had any charge or care of it. He does not deny that he made this statement, and delivered it to Ireland. Nor does his statement, appended to his answer, of the indebtedness existing at the time the agreement was made, wherein he charges interest at the rate of six per cent. per annum, only give color to his version of the affair ; for the amount of the indebtedness, according to the statement just referred to, was, on the day of the date of the agreement,

$2168.56, whereas the agreement, drawn by Loper himself, states it $2364.25 ; and the difference between the two arises from the difference in the rates of interest charged. It is too obvious from the testimony, for further remark, that the agreement between the parties was for the payment of interest by Ireland at the rate of twelve per cent. per annum on the debt. But the court will not allow a mortgagee in possession compensation for his trouble in taking care of the estate, even though there is an agreement between him and the mortgagor, that he shall have such compensation. *Clark* v. *Smith, Saxt.* 121, 137 ; *Vanderhaise* v. *Hugues,* 2 *Beas.* 410 ; *Coote on Mortgages* 343, 365. There is an especial reason why Loper should not have compensation. It was his duty to keep a just and faithful account of his receipts and expenditures from, and upon, the mortgaged premises. The book of account, which he produces as that in which he has kept the account, is not only utterly unworthy of credit, but is, of itself, strong, if indeed it is not conclusive, evidence of fraud on his part. It contains no other account. It abounds in material alterations, apparently arbitrarily made, in his own favor. Charges against Ireland have been largely increased, by alterations of figures, on almost every page. A trustee who produces before the court such an account of his dealings with the trust estate, has forfeited all claim to compensation.

His account, appended to his answer, is made up with annual rests as against Ireland. He is not entitled to such rests. He should annually have applied the surplus of the receipts over his disbursements, to the payment of the interest due him on his debt, and if it were more than sufficient to answer that purpose, he should have credited the excess on the principal. If, in any year, his disbursements had exceeded his receipts, the amount of the deficit should have been added to the principal of his debt. That he did not advance to Ireland all the money charged in his account as loans, is clear. Ireland specifies twenty-seven instances in which the receipts given by him to Loper for money loaned, exceed (in many cases, very largely,) the amounts really advanced. The

aggregate of these excesses is $1632.13, not including the transaction in reference to the watch. Loper does not, in fact, deny the charge. He says that he cannot tell what Ireland received on any of the receipts which he, Loper, produces as evidence of loans. As to the amount of some of these receipts, (no other evidence of indebtedness was given for the loans,) he claims that no inquiry can be made in regard to them, because he alleges that, by agreement between him and Ireland, $1620 of the principal of the legacy of $4000 were appropriated to the payment of the debts represented by them. The proof of this alleged appropriation rests wholly on the testimony of Loper himself, which is wholly uncorroborated, except by the endorsements on the receipts which he claims to have made when the $1620 were paid to him. These are in his handwriting, are not signed by anybody, and are merely acknowledgments of payment of the amounts mentioned in the receipts. It is noteworthy, however, that Loper retained in his possession, these very receipts which were the evidences of the indebtedness, and he now produces them to the court. Why did he not deliver them up to Ireland when payment of the amount they represented had been made? He testifies that Ireland paid him the money in his, Loper's, office. His counsel argues that strong moral corroboration of Loper's testimony on this subject, is to be found in the entries of the receipts of the $1620, in the account books above mentioned, wherein the two sums of $1000 and $620 are entered under the date when each was received, as "returned." The moral weight of these entries, however, is against Loper, for the addition of the word "returned," appears to have been the result of an afterthought. In one of the entries, it is written over an erasure, and in the other, it was obviously inserted after the entry had been made. The proof of the specific appropriation of the $1620 to the payment of the indebtedness represented by the receipts, is by no means satisfactory. Loper will be allowed the amount actually received by Ireland when the receipts were given and no more, with lawful interest thereon. The complainant's

counsel insists that Loper ought not to be allowed any payments on account of taxes assessed against the mortgaged premises, because he gave in the property to be assessed as his own, and it was therefore taxed with his property, so that, as they contend, it is now impossible to say what is the amount assessed in respect of the mortgaged premises. If it prove to be impracticable to ascertain what taxes Loper has paid, in respect of Ireland's property, in any year, he should have no allowance for taxes for that year. It was his duty to have had the mortgaged premises assessed separately. His charges for taxes paid in his book of account, will be no guide in this matter. They are utterly unworthy of credit. Every one of them, from 1861 to 1872, with the exception of the years 1868 and 1869, has been altered, some of them in such a manner as to increase, apparantly entirely arbitrarily, the charge against Ireland, and others in such a manner as that it is impossible to discover what the figures originally were. Loper is to be allowed for all proper disbursements, and is to account for all his receipts. He is to be charged interest for any money received by him over and above his expenditures for the mortgaged premises, after his debt was paid off, and there will be annual rests as against him in such case. He is to account, not only for the rents, issues and profits received by him from the mortgaged premises, but also, for such as he reasonably might and ought to have received. If his account, appended to his answer, be restated according to the principles above indicated, it appears that his debt, allowing him in respect of his loans only so much as he actually advanced, but allowing his charges in other respects, was, with all lawful interest thereon, paid off at the end of 1867, and there was then a balance against him which, at the time of filing the bill, had increased to about $1500. In this calculation the $175 claimed by Loper in the transaction in regard to the watch, is allowed him for the purposes of the calculation. In the account, however, he is to be allowed only the amount paid him at Ireland's request to redeem the watch and chain, $63, with lawful interest from the time of

making the loan. The retention or loss of the chain by Loper will fairly offset the amount, $5, agreed to be paid by Ireland for Loper's services in redeeming the property. Ireland is entitled to a credit of $58.87, paid by him to Loper on account of the transaction. It is evident that Loper charged Ireland $100 premium for advancing the $63, and exacted of him an agreement to pay interest at the rate of twelve per cent. per annum, for the amount of the loan and premium, and the $5 which Ireland was to pay him for his services. It appears, also, that Loper advanced on the mortgage on the Deerfield farm, only $368. In the account, that sum is to be taken as the principal of that mortgage.

Loper will be decreed to convey the mortgaged premises to the complainant in trust for Ireland, on the trust set forth in the bill of complaint, and there will be a reference to a master to take and state the account.