CAROLINE BROKAW et al., executors, appellants,

*v.*

EDWARD V. BROKAW, respondent.

A testator, who died in 1877, gave all his personal property to his wife, and directed her and M., as his executors, to sell and convey all his real estate as soon as convenient, and at such time as would be for the best interest of the estate, and to divide the proceeds into two shares, one of which he gave to his wife, and the other to his executors, to apply to the support of his father, and, after his father's death, to divide what remained among his nephews and nieces. Testator owned a farm and a tract of about fifty-one acres; the latter the executors sold according to the will, the other had been conveyed to testator in 1865 by his father, on condition that testator would provide him with a home thereon, and with support &c. Testator's father survived him, and lived until 1883, and, with the widow, remained on the farm, refusing to release his claim thereon, and was maintained by the executors. After his death and the sale of the farm, which had been testator's homestead—*Held,*

(1) That the widow had no right to occupy it as a dowress, because the provisions of the will in her favor were inconsistent with her claim to occupy the homestead until her dower should have been assigned, and she would be presumed to have elected to accept those provisions in lieu of her dower.

(2) That the executors, not having been able to dispose of the farm by reason of the father's claim thereon, and his refusal to release it, are chargeable with one-half the amount of the value of its use and occupation, and are to be credited with one-half the taxes and insurance of the premises, and are to be allowed the expense of the father's maintenance.

(3) That testator's heirs-at-law have no claim, as such, to the rents and profits between the death of testator and that of his father, but are entitled to an ac-

count of one-half of those rents and profits, and to have them applied towards the father's support.

(4) That two of the principal exceptions to the executor's account having been correctly allowed by the orphans court, an order that the executors personally pay the costs thereof, and also a counsel fee to the exceptants, was not unjust, and should be affirmed.

Appeal from decree of Middlesex orphans court.

*Mr. Jacob Weart,* for appellants.

*Mr. J. J. Bergen,* for respondent.

THE ORDINARY.

Garret G. Brokaw, late of Middlesex county, at the time of his death was the owner of a farm of one hundred and five acres, and another tract of about fifty-one acres. He died February 24th, 1877. By his will he gave all his personal property, after payment of his debts and funeral expenses, and costs of settling his estate, to his wife. He then directed his executors (his wife and Archibald C. Wallison) to sell and convey all of his real estate, as soon as convenient after his decease, but at such time as would be for the best interest of his estate, and divide the proceeds into two equal parts; and he gave one of those parts to his wife, and the other to his executors, in trust, to safely invest it and pay to his father (Samuel S. Brokaw), from time to time, whenever he should desire it, and ask for it, so much of the interest, and also so much of the principal as his father, in his own uncontrolled judgment, should require for his own comfortable support and maintenance so long as his father should live. And the testator directed that in case his father's mental faculties should become impaired so that he should become unable to appropriate and use the money, the executors should use and expend for him so much of the principal and interest as should be needful and proper for his support, so long as he should live; and he bequeathed whatever, if anything, of the fund so created and set apart for his father, should remain after his father's death, to the children of his, the testator's, deceased brothers who should be living at the time of his father's death, in equal

20

Brokaw v. Brokaw.

shares, to be divided *per capita;* and, if only one should survive, then the whole was to go to that one. The farm of one hundred and five acres was conveyed to the testator January 6th, 1865, by his father, upon condition that he, the testator, should suffer and permit his father to have a home and maintenance upon the premises, in the testator's family, so long as his father should live; and the testator thereby agreed, in consideration of the conveyance, to furnish and provide for his father good, sufficient, appropriate, fit, proper, comfortable, convenient and suitable food, lodging, raiment, nursing, care, medical attendance and medicines during his sickness, and all necessary care and attention during sickness and health, to make him comfortable; and that he would furnish and provide for him, at his death. proper burial, and provide a suitable tombstone for his grave. At the death of the testator his father was in the eighty-second year of his age, and, when he died (which was six years and nine months after that time), he was in his eighty-eighth. For the greater part of the period between the testator's death and his own, he was an invalid, and confined to his room, and part of the time he was confined to his bed.

The executors, in execution of the power of sale conferred upon them by the will, sold part of the tract of about fifty-one acres, before the death of Samuel S. Brokaw, for $1,150, and paid one-half of the proceeds to the widow, and applied the rest, except $1, to his support. Because of the condition upon which the testator held the farm, they could not sell that property to advantage before the death of Samuel S. Brokaw, who refused to release. The widow, from the death of the testator to the death of Samuel S. Brokaw, continued to occupy the farm, and kept and cared for him there. After his death, the executors sold the farm and the residue of the fifty-one acre tract for $7,112. Of this money they paid over one-half to the widow, and accounted in the orphans court of Middlesex for the rest. In the account they charged themselves with the half of the $7,112, and interest at six per cent. per annum upon the amount of that half from the death of the testator. They claimed credit for half of the taxes and insurance upon the property for the same

time and for the support of the testator's father, money paid him, &c. &c. Exceptions were filed by Edward V. Brokaw, a son of the testator's deceased brother John. Some of them were allowed, and the accountants were accordingly charged with the rental value of the farm from the death of the testator until the death of his father, instead of the interest on one-half of the purchase-money of the property, and were credited with all of the taxes and insurance for that period, instead of only half thereof. The charge for board &c. of the testator's father was reduced, and certain items were struck out because the same money had been previously charged in the account. The court decreed that the accountants pay out of their own funds the costs of both sides on the exceptions, and a counsel fee of $75 to each side. From part of that decree the executors appealed to this court.

The respondent insists that, inasmuch as the title to the farm was, from the death of the testator to the death of the testator's father, in the heirs-at-law of the former, the rents, issues and profits of the property for that period should go to them; or, if not, should be applied to the satisfaction of the claim for the support &c. of the testator's father. The property was not rented during that time, but, as before stated, was occupied by the widow, who lived upon it, and the testator's father lived with her there and was supported by her. The executors, on the other hand, claim that the widow was entitled to dower in the prop-. erty, and that, her dower not having been assigned, she was entitled to remain on the farm rent free under the statute, which provides that a widow may, until her dower is assigned to her, remain in, hold and enjoy the mansion-house of her husband, and the messuage and plantation thereto belonging, without being liable to pay any rent therefor. *Rev. p. 320 § 2.* They also claim that if she was not thus entitled to the use of the property, she was, under the will, entitled to one-half of the rents, issues and profits. She was not entitled to occupy the property rent free as a dowress. She accepted the provision made for her by the will, and that provision was inconsistent with her dower. The will gives her all the personal estate after

payment of debts and funeral and testamentary expenses, and then directs that the executors sell, as soon as conveniently may be after the testator's death, at their discretion as to the time of sale, all his real estate, and divide the proceeds into two equal shares, of which the will gives her one and devotes the other to the support of the testator's father &c. The testator certainly did not intend that she should have her dower in his land in addition to the provision made in the will for her. Where the provisions of the will manifest a clear and unequivocal intention on the part of the testator to bar his wife's dower, it is sufficient, without express words, to put her to her election between the provision made for her in the will and that made for her by law. *Stark* v. *Hunton, Sax. 216 ; Colgate* v. *Colgate, 8 C. E. Gr. 372 ; Stewart* v. *Stewart, 4 Stew. Eq. 398.*

The heirs-at-law of the testator have no claim, as such, to the rents and profits of the farm. Their claim to the property is under the will. The testator, manifestly, did not intend that they should have the rents and profits. He directed that the property be sold as soon after his death as might be convenient, and, but for his father's refusal to release his claim under the condition, it would have been sold accordingly. The heirs-at-law are entitled to an account for the half of the value of the use and occupation, and to have it applied to the cost of the support &c. of the testator's father. Where a testator directs his executor to sell lands for a particular purpose, until such disposition is made of them, the heir is entitled to the rents and profits unless the testator has, by express terms or by implication, otherwise disposed of them ; but whoever is entitled to the beneficial interest of the land from the death of the testator until it is sold, is entitled to the rents and profits. *Current* v. *Current, 3 Stock. 186.* In that case the testator directed his executor to sell at public auction or otherwise, as to him should seem best, and for such prices as he should deem expedient, all the rest and residue of his land and real estate and personal property, and the money arising from such sale, with certain other moneys, to divide among eight of the testator's children not before provided for in the will. He died in 1849, and the executor sold in 1852.

Brokaw *v.* Brokaw.

It was held that those eight children were entitled to the rents and profits for the intermediate time.

As before stated, the property was not rented, but the widow occupied it. The executors are chargeable with a proper sum for the use and occupation. The counsel of the parties agreed that the value of the use and occupation for the whole time was $3,346.10. The executors are chargeable with one-half of this sum, or $1,673.05, which is the amount with which they charged themselves as interest; and they are to be credited in this account with one-half only of the taxes and insurance. The amount on which commissions are to be allowed will, of course, be reduced in accordance with this decision.

The appellants insist that the award by the decree, that the costs and counsel fees upon the exceptions be paid by them out of their own funds, is erroneous. But of the exceptions, two—one as to a duplicate charge of a large amount of money, and the other as to the amount to be allowed for board &c. of the testator's father—were sustained. It would not be proper, under the circumstances, to put the cost of the litigation upon the trust fund. There is no error in that part of the decree. The costs of the appeal, and a counsel fee of $50 to each side, will be paid out of the fund.