NELLIE PERRY WELLS et al.

*v.*

FIDELITY TRUST COMPANY, executor, &c., of J. Brodhead Woolsey, et al.

[Submitted July 19th, 1921. Decided July 29th, 1921.]

1. In a suit to enforce specific performance of a contract to leave certain property by will, witnesses who were made parties by defendants' counter-claim, and who assigned their interests to complainant, their sister, are not competent, where it is clear that the assignments were made to evade the statute and without adequate consideration.

2. Evidence *held* to show that the witnesses who so assigned their interest are incompetent.

3. It is impossible to render witnesses incompetent by the subterfuge of making them parties to a suit.

On bill, &c.

*Messrs. Pitney, Hardin & Skinner (Mr. Alfred F. Skinner and Mr. Blair Reiley)*, for the complainants, and for Jennie Tunbridge, Jennie Fletcher, James Perry and Emily Tunbridge, defendants.

*Messrs. McCarter & English,* for the defendants James Perry Woolsey and others.

*Mr. Charles C. Deubel,* for the defendant Veronica Rensler.

*Mr. Francis Lafferty,* for the defendant Fidelity Trust Company.

*Messrs. Schwartz & Schwartz,* for the defendant John Robinson.

FOSTER, V. C.

This is an action to establish, and to secure the specific performance of, an agreement alleged to have been made by J.

Brodhead Woolsey with complainants and others, who are collateral relatives of his wife, under which it is claimed he agreed to leave to them by his will certain property which had come to him by the will of his wife.

Mrs. Woolsey, who was the aunt of complainant, executed her will on August 27th, 1907, and died on September 24th following. By her will she gave practically her entire estate (which had come to her from her father, James Perry) to her husband, J. Brodhead Woolsey, subject to the loss of it in case of his remarriage.

For years Mrs. Woolsey had been afflicted with Bright's disease and was addicted to the use of laudanum. Because of the feeble, physical and mental condition which complainants claim Mrs. Woolsey was in at the time she executed her will, about a month before her death, they allege that complainants, or some of them, and other relatives of Mrs. Woolsey, threatened to contest the probate of her will, and that Mr. Woolsey, in order to avoid such a contest, made the agreement in question, the consideration for which was the forbearance on the part of complainants and the others, from making the contest, and in permitting the will to be admitted to probate without objection.

Mr. Woolsey died on August 19th, 1919, leaving a will executed by him on December 7th, 1918, by which he gave the bulk of his estate, including what remained of the property he had received from his wife, to his nephew, the defendant James Perry Woolsey. In his will Mr. Woolsey made some provision for the complainant Mrs. Nellie Perry Wells and others of his wife's relatives, and he stated therein that "I have made no provision for my nephews James and Clarence Perry, for the reason that I have made substantial advances to each of them;" and the proofs show that very substantial advances were made to James Perry.

About two months after Mr. Woolsey's death, about October 31st, 1919, James Perry, one of the beneficiaries of the alleged agreement, assigned his interest therein, and in the estates of both Mr. and Mrs. Woolsey, to his sister, the complainant Mrs. Nellie Perry Wells; and about November 3d, 1919, Mrs. Emily Tunbridge, another beneficiary under the agreement, made a

similar assignment of her interest to Mrs. Wells, and this suit was then begun, January 3d, 1920. The defendants James Perry Woolsey and others filed their answer and counter-claims against James Perry and Mrs. Tunbridge, making them parties to and asking for a determination in this action of their respective interests, under the alleged agreement, and in the estates of Mr. and Mrs. Woolsey.

From the record it is clear that there is not sufficient evidence to establish the alleged contract without the testimony of Mrs. Tunbridge and James Perry. Their evidence was received against defendants' objection, under the reservation that it would be removed from the record if due consideration of their assignments and the circumstances connected with their execution, and the consideration and purpose for which they were made justified that course.

Having reached the conclusion that without the evidence of James Perry and Mrs. Tunbridge the proofs are not sufficient to establish the alleged agreement, it becomes necessary to determine if the assignment of their respective interests removed the bar of the statute (section 4 of the Evidence act) and qualified them to give testimony respecting their conversations and transactions with the decedent, J. Brodhead Woolsey, which resulted in the contract in question. From the proofs it appears that James Perry executed the assignment under the following circumstances: In October, 1919, he was confined in the penitentiary at Caldwell, in this state, for embezzlement; some time in this month his brother Clarence, one of the complainants, called on him and they discussed Mr. Woolsey's will; later, Mr. Reiley, of counsel with complainants, called and explained to him that it was necessary for him to assign his interest under the agreement in order to qualify him as a witness in this action, which was then in preparation, and some one suggested to him the cancellation of his indebtedness to his sister Mrs. Wells as an ostensible, if not an actual, consideration for the assignment.

Perry testified that his reasons for executing the assignment were: "Well, I wanted to render my sister a service; we will count that as the first; and, in the next place, I wanted to be released from my indebtedness to her."

He added that what he had in mind in rendering his sister a service was that he might be freed from his disqualification as a witness and free to testify in her behalf as a witness in this suit.

The indebtedness he referred to amounted to about $20,000, which Mrs. Wells had advanced to him, or had been compelled to pay as an endorser on his notes. The last of these payments having been made eight or nine years before the assignment was executed; when the assignment was made, Perry knew her claim was barred by the statute of limitations; and he was not then, and for some years had not been, financially responsible. Aside from Perry's statement, no explanation is offered for the adjustment and settlement of Perry's indebtedness to Mrs. Wells at this particular time; nor for his acceptance from her, as a consideration for this assignment, of the cancellation of this uncollectible indebtedness—an indebtedness that amounted to but one-third of the $60,000 he estimated as his share in the estates of Mr. and Mrs. Woolsey.

The explanation given by Mrs. Tunbridge for assigning her interest in the agreement to her cousin Mrs. Wells is equally unsatisfactory. It appears from her statement that Mrs. Woolsey frequently said that she intended to leave Mrs. Tunbridge $2,000 in her will, or through Mr. Woolsey; that neither of them made this provision for her, and she had decided "she would not fight for her share." She told Mrs. Wells, while this suit was in preparation, that she "would sign off anything to her because she [I] didn't expect to get anything. I withdrew my hands of the whole thing, but I would do what I could for her and what I knew I would be willing to testify." She further states that she executed the assignment "because there was nothing coming and I wanted Mrs. Wells to have all that was coming to her. I wasn't going to fight for any share or anything at all." It is clear that Mrs. Tunbridge executed the assignment because she had concluded she would never receive the expected legacy, and her view of the matter was apparently confirmed after her talk with Mrs. Wells, and by the contents of a letter dated October 29th, 1919, which she received, with the form of assignment, from counsel for complainants. In this letter counsel informed

her that her right "was an extremely hazy and uncertain one and could not be enforced without a suit, the result of which would necessarily be a very doubtful one," and counsel further informed her that if she continued the owner of the right to this legacy, they would have to make her a party to the suit, and this would disqualify her from testifying. A few days after the receipt of this letter Mrs. Tunbridge executed the assignment. The consideration for the assignment from Mrs. Tunbridge is her love and affection for Mrs. Wells. During the ten or more years that elapsed between the date of Mrs. Woolsey's death and the execution of the assignment, such manifestation of her love and affection for Mrs. Wells was never considered necessary by either of them; and this assignment, as an evidence of love and affection, was brought into existence as a result of their conference about this case and by the letter from complainants' counsel.

The consideration for Perry's assignment consisting, as it does, of the cancellation of an uncollectible debt, amounting to only one-third of his interest in the agreement in suit, is wholly inadequate, taken in connection with his admitted indifference to the indebtedness, owing by him to his sister, to support the claim that his assignment was made in good faith, for the purpose of absolutely disposing of his right to receive $60,000, or some substantial part of it, in the event of a successful outcome of this litigation. The history of Perry's relations with his sister refute his pretence that he unselfishly desired to help her in this litigation by the sacrifice and surrender of all his interests therein.

For years his conduct compelled her to sacrifice her property, her money, and even her jewelry, to pay his debts; and for years thereafter he made no effort to repay her. The idea of finally making such payment, by this so-called assignment, did not even originate with him; that came from counsel with complainants, and they made the suggestion for the purpose, if possible, of making the assignment *bona fide* and to thereby qualify Perry as a witness in these proceedings.

It is apparent that this pretended cancellation of a worthless indebtedness is a mere subterfuge, designed to obscure the fact that this assignment, like the Tunbridge one, was made solely for the purpose of removing the assignor's disability as a wit-

ness; and to permit this evident purpose to be accomplished would be to sanction a fraud upon the statute. *Platner* v. *Ryan, Executor, 76 N. J. Law 239; Allfather* v. *Schlicher, 86 N. J. Eq. 1; Palmateer* v. *Tilton, 89 N. J. Eq. 40; Hodge* v. *Coriell, 44 N. J. Law 456; Cullen* v. *Woolverton, 65 N. J. Law 279.* and *Clendenmin* v. *Clancy, 82 N. J. Law 418.*

From the circumstances narrated, I am unable to find that either of the assignments were made in good faith, for the purpose of transferring to, and absolutely vesting in, Mrs. Wells all of the interests of the assignors in the result of this litigation, and in the estates of Mr. and Mrs. Wells; and I conclude that the sole purpose for which the assignments were suggested and made, was to evade the bar of the statute, and by such evasion secure the testimony of the assignors, to establish this alleged agreement. This purpose is so apparent that the assignments defeat the object they were intended to achieve, and, therefore, the testimony of Mrs. Tunbridge and of Mr. Perry will be stricken from the record.

This conclusion has been reached without considering the effect, if any, upon the admissibility of the evidence of Mrs. Tunbridge and Mr. Perry, of the fact that by the counter-claims they have been made parties to the action.

If it were necessary to consider them as parties, admittedly made such for the purpose of preventing them from testifying, I should regard, with the same suspicion, the pleading making them parties, as I regard the assignments intended to qualify them as witnesses; as it is just as impossible to raise the bar of the statute by a subterfuge as it is to remove it by such means.

The record, corrected by the elimination of the evidence of the assignors, not being sufficient to establish the agreement, I will advise that the bill be dismissed.