This bill involves the title to and ownership of two portraits, one of Colonel John Bayard, of Revolutionary fame, and the other of his wife, Margaret Hodges Bayard, by the famous artist, Charles Willson Peale, and seeks an accounting by the defendant John Bayard Kirkpatrick, Jr., of the proceeds of the sale of said portraits.
The portraits in question became the property of the decedent, J. Bayard Kirkpatrick, Sr., under the will of Mary Ann K. How in July, 1887, and they hung upon the walls of the dining room in the Kirkpatrick home in New Brunswick from that time up to the time of his death on September 12th, 1912, and thereafter for some time, when they were removed by the defendant John Bayard Kirkpatrick, Jr., and taken to his home in Highland Park. The exact time of removal is in dispute. Defendants say about one month after testator's death and the complainants say about six months thereafter; but as I view the matter the exact date of their removal is not important. At the time of the elder Kirkpatrick's death the portraits were considered of no particular value except as heirlooms, but in 1928 the defendant John Bayard Kirkpatrick, Jr., sold them for $25,000 and they are now a part of the collection of this famous artist in the Philadelphia Art Museum, to which it is alleged they were sold for $100,000. J. Bayard Kirkpatrick, Sr., left a will dated November 15th, 1905, by which he left all his property to the complainant Andrew Kirkpatrick and the defendant John Bayard Kirkpatrick, Jr., as executors and trustees in trust to pay the income to his widow, the defendant Mary E. Kirkpatrick, for life, or during her widowhood, and after her decease or remarriage to his children then living. The complainants claim that the portraits were the property of the testator at the time of his death and passed by his will, and that their sale by the defendant John Bayard Kirkpatrick, Jr., was in violation of the trust imposed upon him by that will. The defendants deny this and claim that the portraits were the property of the defendant John Bayard *Page 393 
Kirkpatrtick, Jr., and that they had been given to him by his father during his lifetime. The complainants, the defendant John Bayard Kirkpatrick, Jr., and Laura B. Kirkpatrick are children of the testator, and the defendant Mary E. Kirkpatrick is his widow. Laura B. Kirkpatrick and Mary E. Kirkpatrick refused to join in this suit as complainants and were therefore made defendants because of their interest in the controversy, evidently pursuant to rule 5 of this court. It is plain that John Bayard Kirkpatrick, Jr.'s, title to the portrait is based upon an alleged gift inter vivos. The property was in the possession of the testator at the time of his death and the presumption is that he owned it. The burden of proving title in another is on him who asserts it. Therefore, if the alleged gift is not established by competent evidence in this suit the complainants are entitled to the relief prayed for by the bill.
John Bayard Kirkpatrick, Jr., was a member of his father's household until July 1st, 1912, when he moved into his new home after his marriage. His father died two months and twelve days thereafter. The only testimony tending to establish a gift of these portraits was that of the defendant Mary E. Kirkpatrick and Laura B. Kirkpatrick which was received tentatively over the objection of the complainants that it was incompetent under section 4 of the Evidence act, and the testimony of Bessie M. Kirkpatrick, the wife of the defendant John Bayard Kirkpatrick, Jr. The testimony is to the effect that the portraits were always considered to be the property of the son Bayard and that on numerous occasions during his lifetime his father had said, "I have given those portraits to Bayard," "those portraits are Bayard's," or words of similar import. An issue as to the exact testimony on this point is raised in the briefs of counsel and I therefore quote from the transcript the entire testimony respecting statements or transactions of the decedent evidencing a gift inter vivos, as follows:
Mary E. Kirkpatrick, the widow, testified that the testator had said "these portraits are Bayard's; I have given them to him." *Page 394 
"These portraits — I have given these portraits to Bayard."
Laura Kirkpatrick, testator's daughter, testified as follows: "I heard him [testator] say they belonged to Bayard." "He said these pictures are Bayard's." "He used to refer to them all the time as Bayard's." "These pictures are Bayard's."
Bessie M. Kirkpatrick testified that on one occasion, long prior to her marriage, when she was dining in the Kirkpatrick home, Bayard's father referred to the portraits and "when we had finished dinner Mr. Kirkpatrick told me the pictures — he pointed out the pictures to me and said — told me all about them, and told me who they were, pointed them out, and said they were Bayard's pictures and he had given them to Bayard and supposed that they would be taken to our house after we were married."
And again, "he said to everyone in the house that those pictures were Bayard's." "He always said — he said that night — he pointed to them and he said `I have given these pictures to Bayard.'" "I suppose some day they will be over at your house."
It is conceded that there was never any manual delivery of the portraits by the father to the son, but it is claimed that such delivery as they were capable of was had and that in view of the fact that Bayard was a member of his father's household at the time of the alleged gift no actual manual delivery was necessary.
But two questions need be considered in this suit: First, the competency of the testimony of Mary E. Kirkpatrick and Laura B. Kirkpatrick; and second, whether the evidence submitted herein establishes a gift inter vivos. I will consider these questions in the order stated.
 I.
The competency of the testimony of Mary E. Kirkpatrick and Laura B. Kirkpatrick was challenged by objection of counsel at the final hearing that it was not competent under section 4 of the Evidence act (P.L. 1900 p. 362; 2 Comp. Stat. p. 2217), and the point was reserved. *Page 395 
It is conceded that neither Andrew, the complainant, nor the defendant Bayard was competent to testify to any transactions with or statements by the decedent. Lodge v. Hulings, 64 N.J. Eq. 761; Murphy v. Schmidt, 80 N.J. Law 403. But it is contended that neither the mother nor the daughter were necessary parties to this suit and their joinder was only for the purpose of invoking the rule of evidence upon which the objection is based. Of course, if that were so, they would not by such joinder be disqualified to testify on this point. Harrison'sAdministratrix v. Johnson, 18 N.J. Eq. 420, 425. Nor could they have been qualified as witnesses merely by joining them as parties defendant if, as parties complainant they would have been disqualified. Kempton v. Bartine, 59 N.J. Eq. 149; affirmed,60 N.J. Eq. 411. See, also, Platner v. Ryan, Executor,76 N.J. Law 239. "In enforcing the object of the statute, courts will look at the substance of the cause and observe, through the forms of the procedure, who are the real parties whose interests are antagonistic, and then will see that when one is put at a disadvantage by death, the other shall not be permitted to profit by the misfortune of his adversary." Smith v. Burnet, 35 N.J. Eq. 314,321. The best way to determine whether or not the testimony of a party is competent in matters of this kind is to inquire whether if he were on the opposite side of the controversy he could testify over objection. If as complainant he would not be permitted to testify, then the changing of his position to that of defendant does not make his testimony any the more competent. Here, if the widow and daughter were complainants, they would be precluded from testifying to transactions of or statements by the testator. The rule is the same whether or not their joinder as parties defendant is by choice. If the complainant could not qualify them to testify in his behalf by putting them in as defendants, he can no more qualify them to testify against him. The language of Vice-Chancellor Van Fleet in McCartin v. Traphagen's Admr.,43 N.J. Eq. 323 (at p. 327), is peculiarly applicable to the case at bar. In that case, after referring to the nominal position of the parties, he said: *Page 396 
"Their position on the record is that of defendants, though their interest in the litigation is that of complainants. In respect to the whole subject-matter of the litigation, they have the same interest exactly that their brother, the complainant has. * * * This suit was brought as much for their benefit as it was for the benefit of the complainant. * * * There can be no doubt, that if the three Misses McCartin had taken their true position in the litigation, if they had placed themselves where their interests and their feelings place them, where they are, in everything except the barest form, they would have been incompetent to give the evidence objected to. Though they are defendants in form, they are complainants in fact. If a decree goes in favor of the complainant, it must, ex necessitate, give the same measure of relief to each of the these defendants that it does to the complainant, * * *."
The fact that upon affirmance of the decree in that suit (45 N.J. Eq. 265) this language of the eminent vice-chancellor was neither approved nor disapproved by specific reference thereto does not in the slightest degree affect its applicability here.
In that case the voluntary choice of the position of defendant was not permitted to qualify such defendants as witnesses to establish their rights in the property involved. Here the mother's and daughter's position as defendants is in effect a voluntary one as they refused to become complainants, and this position will not be permitted to qualify them as witnesses to defeat the complainant's rights notwithstanding that they may desire to waive their own rights in favor of the other defendant; nor will such a waiver on their part aid in establishing a giftinter vivos. It is true the reason for joining them as defendants rather than as complainants is not stated in the bill, but the bill in this respect is amendable and, as the evidence showed that they refused to join as complainants when requested to do so, the bill will be considered as amended.
In the Traphagen Case, Vice-Chancellor Van Fleet said:
"The nominal position of the person, whose competency is *Page 397 
challenged, as a party on the record in the particular suit, is, in my judgment, of no importance, but the test, in such cases, is, does he stand in a position of antagonism to the estate of the intestate or testator represented in the suit or proceeding in which he is called as a witness, so that if he should testify upon the prohibited subjects, he would give his testimony under a temptation to forget what he should remember, or to commit perjury?"
In ascertaining the relation of the parties to each other under the Evidence act the court will examine the record to ascertain whether or not they are in fact antagonistic and will not be controlled by the voluntary classification of parties made by the complainant in drawing his bill. Kempton v. Bartine, 59 N.J. Eq. 149.
For other cases involving the application of section 4 of the Evidence act see the following: Palmateer v. Tilton, 40 N.J. Eq. 555,557; Tichenor v. Tichenor, 43 N.J. Eq. 163; Horn v.Arnett, 91 N.J. Law 110, 113; Wells v. Trust Co., 93 N.J. Eq. 94; Deak v. Gas Light Co., 1 N.J. Mis. R. 457, 458.
The statute by its terms applies to "parties" to the suit, and it is conceded that if these witnesses are necessary parties, their testimony is incompetent. That they are necessary parties seems to follow from the general rule as stated in the following authorities: Stillwell v. M'Neely, 2 N.J. Eq. 305; Van Doren
v. Robinson, 16 N.J. Eq. 256; Cool's Executors v. Higgins,25 N.J. Eq. 117; Elmer, Trustee, v. Loper, 25 N.J. Eq. 475; TheNewark Savings Institution v. Jones' Executors, 35 N.J. Eq. 406; Tyson v. Applegate, 40 N.J. Eq. 305, 311; Brokaw v.Brokaw, 41 N.J. Eq. 304; Richman v. Donnell, 53 N.J. Eq. 32,34; Day v. Devitt, 79 N.J. Eq. 342; Kocher's Chancery Practice,pp. 91, 114.
But in reaching this conclusion I have not overlooked the fact that there are exceptions to the rule, some of which are mentioned in Kocher's Chancery Practice, pp. 91, 114. Nor do I consider the case of Sweet v. Parker, 22 N.J. Eq. 453,
controlling, as, under the circumstances of this case, where two trustees are on opposite sides of a controversy respecting *Page 398 
the rights and interests of the cestuis que trustent, and where the cestuis themselves voluntarily take opposite sides of that controversy, it cannot be said that complainant would be safe in omitting any of the cestuis as parties to the suit. And aside from this, under the allegations of the bill, the defendant Mary E. Kirkpatrick is both a proper and a necessary party because of the relief prayed against her. In my judgment, the testimony of these two witnesses is incompetent and should have been excluded at the trial. It is now excluded.
 II.
The law applicable to the question now to be considered is not in substantial dispute. It is clear that under our decisions the following facts must appear to establish a gift inter vivos:
1. A donative intent on the part of the donor.
2. Actual delivery of the subject of the gift or some act equivalent thereto, at least to the extent practicable or possible, considering the nature of the thing given.
3. A parting by the donor of all dominion and control over the subject of the gift. Dilts v. Stevenson, 17 N.J. Eq. 407;Matthews v. Hoagland (Court of Errors and Appeals), 48 N.J. Eq. 455; Stevenson v. Earl (Court of Errors and Appeals),65 N.J. Eq. 721; Taylor v. Coriell, 66 N.J. Eq. 262; Andreas
v. Andreas, 84 N.J. Eq. 368; affirmed, 85 N.J. Eq. 211; Swayze
v. Huntington, 82 N.J. Eq. 127; affirmed, 83 N.J. Eq. 335;Provident Institution v. Sisters of St. Francis, 87 N.J. Eq. 424; Bailey v. Orange Memorial Hospital, 102 Atl. Rep. 7; EastRutherford Building and Loan Assn. v. McKenzie, 87 N.J. Eq. 375.
And in 28 Corp. Jur. par. 27 (6) p. 638, the general rule as to delivery is commented upon as follows:
"The rule as to delivery is not so strictly applied to transactions between members of a family living in the same house, the law in such cases accepting as a delivery acts which would not be so regarded if the transaction were between strangers *Page 399 
living in different places. It is not required that the thing should be removed from their common residence. It is sufficient, if it clearly appears that the donor has relinquished, and the donee has acquired, all dominion over and control of the propertybut even in such cases there must be something to show that thegift was completed." (Italics mine.)
In Meyers v. Meyers, 99 N.J. Eq. 560 (at p. 562), Vice-Chancellor Backes said, "the donor's mental attitude must be determined by his acts," and in Wright v. Sanger, 101 N.J. Eq. 203
(at p. 210), Vice-Chancellor Fallon said:
"The evidence to substantiate the defendant's claim should be so cogent as to leave no doubt in the mind of an unbiased person. * * * A gift first asserted after the death of a donor, as in this case, must be regarded with suspicion."
The evidence as to the testator's acts and declarations is very general in character and is given many years after the occurrences were alleged to have taken place. Most of it is with respect to occurrences over ten years before the death of testator, three years before his will was executed and twenty-eight years before the final hearing. A memory which would retain for that period of time the exact words casually spoken indicating a gift prior to or coincident with the statement would be exceptional indeed and yet these witnesses attempt to testify to the exact language used by Bayard's father on the occasions referred to. In my judgment this evidence, considering the lapse of time and the frailty of human memory, is perhaps just as consistent with an intention to make a future gift as it is evidential of a prior completed gift. And in view of the fact that testator's will was not made until three years later, and no specific mention is made therein of the portraits, they being still in his possession, it is permissible to assume that if he had previously intended to make such a gift he had changed his mind and then intended them to pass by his will. It is, of course, presumed that he knew that some unequivocal act evidencing such a gift must occur to protect the donee in his rights in the event that the portraits remained in the donor's possession until his death. *Page 400 
There has been considerable controversy as to whether or not the portraits were included in the inventory of the estate. There were five or six pictures in the dining room; one the property of the widow, and of the others, three were inventoried without description. Complainants claim that the portraits were included in the inventory and the defendants that they were not. In my judgment it is not important. Certainly the fact is not conclusive. Dilts v. Stevenson, supra; Matthews v. Hoagland,supra; In re Fulper, 99 N.J. Eq. 293. The decision must turn upon whether or not there was a valid gift inter vivos and not whether, after the testator's death, the executors thought the portraits were a part of the estate or whether they were omitted, intentionally or otherwise, from the inventory. No one at the time the inventory was made considered them of any particular value except as heirlooms and their omission from the inventory is not, therefore, surprising.
It is conceded that there was no actual manual delivery, and it is clear that there was no symbolic delivery; but if, under the circumstances, actual delivery was impracticable, the fact remains that the testator never released dominion and control of the subject of the alleged gift, and this third requisite of gifts inter vivos is just as important as delivery. The crucial test is "a complete stripping of the donor of all dominion or control over the thing given." Stevenson v. Earl, supra. And there was no sufficient explanation of the fact that after Bayard left his father's household, the portraits were permitted to remain therein until after his father's death. Had there been a valid gift to Bayard, it is natural to assume that upon moving into his new home he would be anxious to move the portraits there as promptly as possible, but more than two months elapsed until his father's death and they still remained in the father's home.
After the portraits were removed to Bayard's home he had an offer of $1,500 for them and consulted his brother Andrew, his co-executor, about the sale. Andrew did not approve and they were not then sold. Bayard did not then claim to own the portraits. The testimony on this point is undisputed. *Page 401 
Some point is made of the fact that seventeen years elapsed after the father's death and before the complainants advanced any claim to any interest in the portraits; but this means little because the estate was not to be distributed until the death of the mother and she is still living. The complainants claim also that the reason for the removal of the portraits to Bayard's home was for safekeeping; that at about the time of their removal the old home was broken up and the furniture stored. While this point is in dispute, it is a fact that shortly after the portraits were removed the home was broken up and the bulk of the furnishings taken to the home of Mrs. Baldwin and later put in storage.
Thus far I have considered the question of the alleged gift in the light of all the testimony respecting statements or transactions of the decedent, and giving that testimony its fullest probative force, I am unable to find that the evidence completely establishes a gift inter vivos.
Excluding the testimony of the widow and daughter, however, there remains as the only support of the alleged gift the testimony of Bayard's wife respecting the casual remarks of the alleged donor more than twenty-eight years ago, long prior to her marriage, and the statements to which she testified, considering the lapse of time and human frailties, is just as consistent with an intention on the part of the testator to make a future gift as with the fact that a prior gift had been made. This is slight evidence upon which to base a finding of a gift inter vivos and to me is unconvincing. My conclusion, therefore, is that at the time these portraits were sold they were the property of the estate of J. Bayard Kirkpatrick, Sr., and that the defendant John Bayard Kirkpatrick, Jr., should be decreed to account for the proceeds thereof. I will advise a decree in accordance with these conclusions. *Page 402