MARY ANN WYCKOFF, complainant and respondent,

*v.*

LINDSAY D. NORTON, defendant and appellant.

[Filed June 18th, 1900.]

The holder of a bond and mortgage surrendered them, canceled, upon the promise of the obligor to give his note for the debt. The performance of the promise was prevented by the death of the obligor.—*Held*, on appeal from a decree made in a suit in chancery to re-establish the lien of the mortgage, that the complainant's remedy was the legal one for recovery of damages for breach of the new promise.

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following opinion:

The purpose of this suit is to restore the lien of a mortgage. Mary Ann Wyckoff, the complainant, was the sister of John

Norton, deceased.  Their father had left them each a one-half interest in a certain farm, and the complainant, with her husband, had conveyed her one-half interest to her brother John for $6,000, for part of which sum she had taken from John a mortgage, dated May 6th, 1882, for $4,000.

John Norton died unmarried on December 13th, 1896.  By his will, dated December 10th, 1896, he gave to his sister, Mary Ann Wyckoff, several items of personal property, the exclusive use of a room in the mansion-house for three years, and provided that his nephew, Lindsay Norton, should conduct the farm for one year, and thereafter have the proceeds of the farm for ten years, upon paying to the complainant $200 a year, during the ten years, and upon paying to Frank Norton, his brother, $500 a year during the same period.  He devised the farm at the end of ten years in fee-simple to Lindsay and Frank Norton.  This farm is still owned by Lindsay and Frank Norton, and is the property which had been covered by the $4,000 mortgage to Mrs. Wyckoff.

On the day the will of John Norton was executed, upon the mortgage of Mrs. Wyckoff was written a satisfaction of that instrument, signed by her, and at the same time the bond accompanying the mortgage was destroyed.  The complainant seeks to have this mortgage restored as an encumbrance upon this property.  Her insistence is that she consented to the destruction of the bond, and satisfaction of the mortgage, in consideration of the promise of the testator that he would make her a promissory note for the sum of $4,000, to stand in the place of the bond and mortgage.  The complainant, who is seventy-four years old, had kept house for her brother John up to the year 1892; she then moved away, but had occasionally visited him when needed, and shortly before his death returned to the homestead where he lived.  On the Thursday before his death, Mr. Schanck, an attorney since deceased, drew his will.  Mrs. Wyckoff's account is that John told her before the execution of the will that he would give her a note in place of the mortgage; that his estate was sufficient to pay his debts.  She says that on the night he made his will, he said: "Fix it now, Mary Ann;" and I said: "I could not do it then."  She says: "We were busy

then—a good many waiting for dinner—and she had work to do in the kitchen." She says that on Saturday he said again: "I will fix our business all up to-morrow morning." On the next morning John died. The only other testimony as to what occurred at the time of the execution of the will, is that of Mr. Niverson, who was one of the witnesses to the will. Mr. Niverson says that after the will was signed John said to the complainant: "Mary Ann, let us fix up your business," and she replied: "I cannot well to-night; we will fix it in the morning." "All right," said John, "we will fix it in the morning, but you can get the papers and sign satisfaction on it," and Mrs. Wyckoff went into another room and brought it out and handed it to Mr. Schanck, and he looked at it and said: "This is the mortgage and this is the bond." He came over to where John and I was, and said: "John are you sure that this is the bond, and he said "Yes." Well, then I will destroy it," and so Mr. Schanck threw it in the stove.

The evidence satisfies me that the account given by the complainant of John's promise to give her his promissory note, in place of the mortgage, is true. There seems to be no room for mistake, and either a promise was made by John, or the complainant is guilty of downright perjury. The theory that the provisions made for her benefit in the will were to be accepted in satisfaction of the mortgage, is entirely repugnant to her testimony. She says, not only that the agreement for the promissory note was made before the will was executed, but that he again promised to do so on the evening before he died. The purport of Mr. Niverson's testimony is that there was a business transaction between John and his sister remaining to be executed after the satisfaction of the mortgage, which transaction John and she agreed should be postponed until the next morning.

It is, however, objected that if it be proved that the deceased made this promise, yet the complainant has a remedy at law by an action for its breach. This right of action, however, I do not think excludes the right of this court to take cognizance of the matter. John did not complete the consideration for which the complainant consented to the cancellation. If he had done

so she would have had evidence of the existence of the debts aside from her own testimony. From the facts now appearing, upon such an action, being deprived of that evidence, her incompetency against the objection of the personal representatives of the deceased would result in the entire failure of her suit. The accident of the death of John prevented the consummation of his promise, and she, therefore, never received the full consideration which she had bargained for, and she is therefore entitled to be placed in *status quo.*

It is also objected that in this suit the complainant is incompetent to testify against the devisees of John. In support of this position the case of *Joss* v. *Mohn, 26 Vr. 407,* is vouched. *Joss* v. *Mohn* was an action brought against the heirs of a deceased debtor, under the statute, and it was held that for the purpose of that act the heir or devisee represented the deceased debtor, in respect to the real property, just as the personal representative represented him in respect to the personalty.

In actions of this character the defendant must be described as "heir," and he appears as such upon the record. In this suit, while the defendant is a devisee, yet he is not made the defendant as devisee, but because he happens to own the land upon which it is sought to re-establish the mortgage. The suit concerns property in whosoever hands it is, and the fact that the defendant happens to own it now, by force of his father's will, and so is a necessary party to the suit, does not disqualify the complainant. *Hodge* v. *Coriell, 15 Vr. 456; S. C., 17 Vr. 354; Palmatier* v. *Tilton, 13 Stew. Eq. 555; Crimmins* v. *Crimmins, 16 Stew. Eq. 86; Smith* v. *Smith, 23 Vr. 207, 210; Vreeland* v. *Vreeland, 8 Dick. Ch. Rep. 387.*

I therefore think that the testimony of the complainant should stand.

I at first thought that there was a difficulty in re-establishing the mortgage without bringing in the personal representatives of John, in which event the complainant would be disqualified under objection. The thought which gave rise to this doubt was this: The evidence of a debt having been destroyed, with the consent of the complainant, the mortgage went with it and could not be rehabilitated until the debt had been re-established, and

this could not be done without the presence of the personal representatives of the obligor.

Then again, in case the mortgage should be re-established, the defendant would have recourse over against the assets of John's estate for payment of the mortgage debt. So upon that ground it seemed equitable to re-establish the debt in this suit. And if, instead of dealing with the mortgage, it should be thought best to restore the vendor's lien, the same difficulty would be presented, for the evidence of the debt for which the lien is claimed having been admittedly destroyed, it would have to be revived by the testimony of the complainant.

I have, however, concluded that the debt can be re-established in respect to the defendants, so far as is necessary to support the mortgage. The decree will not have any force against the estate of John, but the defendants can have their action against the personal representatives, by proving the existence of this debt, which is a lien upon the devised property, they having been compelled to pay it.

I will advise a decree establishing as against the defendants a debt for $4,000, with interest from December 6th, 1896, and re-establishing the lien of the destroyed mortgage to that amount.

*Mr. James Buchanan,* for the appellant.

*Mr. William M. Lanning,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

From the pleadings and proofs may be gathered the following facts: Joshua Norton devised his homestead farm in Monmouth county to his son John and his daughter Mary Ann, who married Charles I. Wyckoff. In 1882, soon after the father's death, Mrs. Wyckoff, with her husband, conveyed to John Norton her interest in the farm, and, for part of the purchase-money, accepted his bond, secured by mortgage on the farm which was thereafter his homestead. John Norton never mar-

ried.   Until 1892 his sister kept house for him at the homestead,
her husband living there also as a boarder.   The Wyckoffs then
removed to Hightstown, but Mrs. Wyckoff would go to her
brother's when sent for.   In 1896 John Norton was struck with
a lingering but mortal illness and about December 1st sent for
his sister, who remained with him till his death.   He told her
that he proposed to make a will, and to some extent discussed
with her its contemplated provisions, and asked her to cancel
her mortgage on the homestead farm on which there was then
due $4,000 of principal and she agreed so to do; but for what
consideration is the gist of the present dispute.   On December
10th, 1896, John Norton's will was drawn by Samuel M. Schanck
(sometimes called Schenck in the papers), a lawyer practicing
in Hightstown, and was executed in the presence of Mr. Schanck
and Edward T. Niverson, a neighboring farmer.   By this will was
bequeathed to Mrs. Wyckoff personal property inventoried by
the executors at $2,943.25; the dividends for life on stock in
a Hightstown bank of the par value of $1,000, and in a Prince-
ton bank of the par value of $500 and a life annuity of $200
charged on the homestead farm.   She was also given a room in
the mansion-house for her life.   The Hightstown bank stock
was given to the testator's nephew, Lindsay Norton, and the
Princeton bank stock to his namesake, a son of his nephew,
Frank Norton.   The homestead farm and appurtenances were
devised to the nephews Lindsay and Frank Norton, with some
temporary limitations as between the two.   An undivided inter-
est in certain other lands was devised to Lindsay Norton.   There
was no residuary devise or bequest.   Mrs. Wyckoff and Lind-
say Norton were appointed executors.   It does not appear who,
beyond the sister and nephews, were the testator's heirs-at-law
and next of kin, but there are indications in the testimony that
there are other nephews or nieces,   At the time of the exe-
cution of the will the bond of Mrs. Wyckoff was destroyed in
her presence and with her tacit assent by Mr. Schanck, before
whom she then signed and he witnessed a writing endorsed on
the mortgage acknowledging its satisfaction and ordering its
cancellation of record.   She delivered to Mr. Schanck the mort-
gage so canceled, and on December 12th, 1896, he caused it to

be canceled of record. On December 13th, 1896, John Norton died. His will was duly proved and the executors both qualified. On January 6th, 1897, the executors joined in an inventory showing personalty of $11,547.25, inclusive of that bequeathed to Mrs. Wyckoff, and on January 18th, 1899, they joined in an account showing a balance in hand of $5,150.52 above the testator's debts, and the articles bequeathed to Mrs. Wyckoff reported as having been delivered to her.

On December 30th, 1899, Mrs. Wyckoff exhibited her bill against Lindsay and Frank Norton and their wives wherein she sets up the existence and origin of her bond and mortgage, and then avers as follows:

"6. That said John Norton was an unmarried man, and died on or about the thirteenth day of December, in the year eighteen hundred and ninety-six, having first made, published and declared, in due form of law, his last will and testament, bearing date the tenth day of December, in the year eighteen hundred and ninety-six, which will, after his decease, was duly admitted to probate by the Surrogate of the County of Monmouth, and duly recorded in his office; that at the time of the execution of his will John Norton was sick and confined to his house; that he was a single man and that your oratrix had for many years then last past been his housekeeper; that a few days prior to the date when he executed his last will, your oratrix being unable to give the exact time, the said John Norton informed your oratrix that he was contemplating the making of a will, and asked your oratrix whether she would consent to the cancellation of the mortgage which she then held upon his farm, and which is herein-above described, and accept in lieu thereof the promissory note of the said John Norton, and that your oratrix, knowing that the estate of the said John Norton was abundantly sufficient to pay all his obligations, and being unwilling on account of his severe and critical sickness to discuss the matter with him, assented to his proposition, and agreed to accept his promissory note for the sum of four thousand dollars in lieu of the said bond and mortgage and to surrender the said bond and mortgage, to the end that the said mortgage might be canceled of record; that on the date of the execution of said will, to wit, on the tenth day of December, in the year eighteen hundred and ninety-six, one Samuel M. Schenck, a practicing lawyer of the borough of Hightstown, in the county of Mercer, and State of New Jersey, visited the house of the said John Norton and engaged himself, at the request of said John Norton, in drafting his will, which after being drafted, was executed by said John Norton; that immediately after the execution of said will, and while the said Samuel M. Schenck was still in the house of said John Norton, the said John Norton requested your oratrix, in the presence of said Samuel M. Schenck, to get the bond and mortgage which your oratrix then held, being the same bond and mortgage in this bill of complaint above described, and deliver them

to the said Samuel· M. Schenck, that he might have the said mortgage canceled of record; that your oratrix thereupon immediately complied with said request, and that said John Norton again promised your oratrix that he would give her his promissory note for the bond and mortgage so surrendered, but that the said John Norton was then so weak and exhausted from the work and excitement incident to the making and execution of his will that your oratrix did not then request the execution of said promissory note, and that, before the execution of said promissory note, the said John Norton died.

"7. That neither the principal of said bond and mortgage nor any part of said principal was ever paid to your oratrix by the said John Norton, or by anyone for him during his lifetime, nor by his representatives since his death, and that there is due to your oratrix the full amount of the said principal sum of four thousand dollars, together with interest thereon from the said tenth day of December, in the year eighteen hundred and ninety-six, being the date when the said bond and mortgage were surrendered by your oratrix as aforesaid."

The bill then sets forth the tenor of John Norton's will as to the devise of the homestead farm, and prays that the complainant's mortgage may be decreed to be a valid and subsisting lien upon the lands therein described, and that the cancellation of the record thereof may be annulled and made void; or that she may be decreed to have a vendor's lien on the said lands for $4,000, and interest from December 10th, 1896, and that such lands may be ordered sold to satisfy the sum due, with costs, and for other relief. To this bill Lindsay (by the name of Lindsay D.) Norton alone answers. He denies the alleged promise to give a note and asserts that the mortgage was paid and satisfied by John Norton.

Samuel M. Schanck 'died in January, 1899. Mr. Niverson knows nothing of the transaction in question and the only proof of a promise by John Norton to give his note to complainant was by her own testimony.

From a decree in complainant's favor Lindsay D. Norton has appealed.

The suggestion of a vendor's lien was very properly disregarded by the learned vice-chancellor. The acceptance of John Norton's bond and his mortgage on the whole estate irrevocably merged the lien that might have been asserted on the interest conveyed. *Brown* v. *Gilman, 4 Wheat. 255; Dudley* v. *Dickson, 1 McCart. 252.*

31

I will therefore consider only the other phase of the case. With some misgiving the vice-chancellor, on the testimony of the complainant alone, advised a decree re-establishing the lien of her mortgage and annulling the cancellation of the record, but ignoring the bond. To rehabilitate the bond the executors of the decedent's will must have been considered as in court in their representative capacity, and the complainant could not have testified to the alleged promise of decedent. *Gen. Stat. p. 1407 pl. 53.* Whether she was a competent witness for that purpose in the suit as framed it is not proper now to decide. It may be that the parties, being in court, were necessarily there in every capacity. Objection was taken to the complainant's testifying to the decedent's promise, and we pass that point without deciding it. Nor do we find it necessary to decide that the mortgage could not be re-established alone. The vice-chancellor's idea was that the devisees could secure indemnity for their loss under his decree by a separate suit against the executors, but that would subject them to a needless risk. The executors, in the interest of the distributees, would be bound to contest, and the result of the suit might not comport with the vice-chancellor's finding of fact in this cause. Furthermore the mortgage was but a security for the bond and there is much in appellant's argument that the executors as such were necessary parties to any suit even indirectly involving its enforceability. Such would seem to be the logical result of the recent decision of this court in *Kempton v. Bartine, 44 Atl. Rep. 461;* affirmed, *45 Atl. Rep. 966.*

But waiving all this and assuming that the finding of the vice-chancellor, that the alleged promise of John Norton to give to complainant his note was in fact made, is sufficiently supported by the complainant's testimony, the decree advised by him was nevertheless unwarranted. The complainant voluntarily surrendered her lien and agreed to rely solely on her brother's personal engagement. To restore the lien would disarrange the brother's testamentary scheme with which she was acquainted. The will is even more favorable to her than were his declarations to her as she gave them in her testimony. There was no fraud or mistake in the cancellation of the mortgage. Death overtook John Norton before he could keep the promise, on the faith of

which it was effected—that is all. The complainant's remedy is to sue upon her unpaid debt or for damages for the breach of promise to give an evidential note, which is but another form for the same substantial thing. That remedy is legal. Of course where a claim against an estate is made by one who legally represents that estate, as does the complainant as executrix, there can be no direct action at law, except against heirs or devisees; but the remedy is nevertheless purely legal. If the claimant is sole representative or has exclusive possession of assets, the claim may be determined upon the accounting; if there is a colleague who disputes the claim, the action may be brought in the court of chancery which in such cases exercises a legal jurisdiction. In the case in hand the complainant's legal remedy is adequate and to that she must be remitted. If she shall fail in proof that will be due to the policy of the law and her own remissness in performing her part of the agreement without exacting contemporaneous performance on his part from her brother.

The decree should be reversed and the bill be dismissed, with costs.

*For reversal*—The Chancellor, Chief-Justice, Van Syckel, Dixon, Collins, Adams, Voorhees—7.

*For affirmance*—Lippincott, Gummere, Ludlow, Bogert, Hendrickson, Vredenburgh—6.