HERBERT S. NORTH, INDIVIDUALLY, AND AS EXECUTOR OF JOSEPH W. NORTH, DECEASED, RESPONDENT, v. JOSEPH W. NORTH & SON, INCORPORATED, APPELLANT.

Submitted March 24, 1919—Decided November 17, 1919.

1. Where by the agreement of purchase of a going manufacturing business the purchaser contracted to fill all the unfilled •accepted orders on the books, unless their cancellation or placing at a higher price could be secured, and in any event to indemnify the seller from all *"liability"* under such accepted orders—*Held*, that the contract to indemnify against liability for non-performance, being coupled with the contract to perform, was a contract to pay a fixed (as distinguished from a contingent) liability should it arise, and that upon the failure of the purchaser to fill the orders within the proper time or to forthwith discharge the liability, the seller had an immediate right of action for the breach of the contract to indemnify against liability, and upon proof of liability, and an absence of proof of defence thereto, could recover, although he had as yet suffered no actual loss;

and further, that the damage the seller was entitled to recover was fixed by the measure of the latter's liability in damages to the customers whose accepted orders had not been filled because of default of said purchaser. *Jeffers* v. *Johnson*, 21 *N. J. L.* 73, and *Miller* v. *Fries*, 66 *Id.* 377, distinguished.

On appeal from the Supreme Court, Union county circuit.

For the appellant, *Alfred F. Skinner* and *Carl A. Feick.*

For the respondent, *Abe J. David* and *Samuel Koestler.*

The opinion of the court was delivered by

WHITE, J. The plaintiff (respondent) being the owner of a going underwear manufacturing business with a large stock of raw (unmanufactured) material on hand, and many unfilled contracts or accepted orders for the completed product outstanding, entered into an agreement of sale of the business to one Schwartz, who was to form a corporation (the defendant-appellant) to take it over. This agreement, beside providing for the immediate transfer of the plant and for the terms of payment therefor, obligated the vendor to sell to the purchaser, at stipulated prices, as it was needed within a definite period, the stock of raw material to be used exclusively in manufacturing goods to fill the outstanding accepted orders or contracts, which contracts the purchaser obligated itself to assume and fill, and to "save harmless and indemnify the vendor (plaintiff-respondent) from any *damages* for breach of said contracts." The contemplated corporation was duly formed and took over the plant and agreement. Subsequently, controversies arose which resulted in a new direct agreement between the vendor (plaintiff), and the new corporation (defendant) expressly ratifying and confirming the first agreement, and while drawn in most respects upon the same general lines, containing more definite provisions, and in particular providing, instead of the indemnity against *damages* provision aforesaid, an indemnity against *liability* provision, as follows: "The company agrees * * * that it will fill all orders for merchandise on the former books

of said North,  *  *  *  and in any event to save harmless
and indemnify the said North from any and all *liability* or
loss or damage by reason of said orders  *  *  *  or the
non-fulfillment thereof or any matter or thing connected
therewith." Another clause obligated both parties to en-
deavor to procure cancellation of or higher prices for as many
of said orders as possible. The defendant corporation did not
in fact fill these outstanding orders, and the proof in the case
showed liability on the part of the plaintiff for such non-
fulfillment. It was not even suggested that there was any
defence to such liability, and, of course, in the absence of
proof the court will not assume a defence to a proved lia-
bility. Each party, however, claimed that the non-fulfillment
was the other's fault, and this was the only question of fact
tried out in the case. The jury decided that question in favor
of the plaintiff, North, and against the defendant corpora-
tion, and rendered a verdict in accordance with the instruc-
tions of the court as to the proper measure of damages, in
plaintiff's favor for the full amount of his claim, $20,000,
upon proof that the price at which goods to fill the orders
could have been bought in the open market at the expiration
of the agreed time for the fulfillment of the orders, was much
more than that sum in excess of the price at which the orders
were to have been filled by defendant, but without proof that
plaintiff had in fact paid out anything or that any judg-
ment had been recovered against him because of the breach.

It is the instruction of the learned trial judge permitting
this verdict that is here claimed to be erroneous. We think
that under the circumstances it was not erroneous.

This is a contract to indemnify against *liability,* and not
simply a contract to indemnify against loss. It expressly
says so, and, moreover, it is coupled with a contract for the
future performance of something, the non-performance of
which, unless justified by the acts of third parties, would give
rise to the liability in question. Under these circumstances,
we think the contract tantamount to a contract to pay should
*liability* arise. Honest men measure their contractual obli-
gations by their undertakings, and not by the ability of the

other party to actually recover from them damages for default. Such men have an interest in seeing that their liabilities are discharged, quite separate and apart from the question of whether or not they have property out of which may be recovered damages resulting from a breach. So, where, what they stipulate for is to be indemnified against *"liability,"* rather than simply against *"loss,"* there is no reason why they should not have what they bargain for. The cases, therefore, generally recognize a clear distinction between contracts to indemnify against "liability" and contracts to indemnify (as it is sometimes expressed) against the result of liability—that is, against "loss." In the former, the contract is a contract to pay should the liability arise and the right of action springs into existence with the liability and the failure to forthwith discharge it; in the latter, actual loss or damage is a prerequisite. *Ross* v. *American Employees Liability Insurance Co.,* 56 *N. J. Eq.* 41; *Gilbert* v. *Wiman,* 1 *N. Y.* 550; *National Bank* v. *Bilger,* 83 *Id.* 51; *Stout* v. *Folger,* 34 *Iowa* 71; *Lathrop* v. *Atwood,* 21 *Conn.* 117; 22 *Cyc.* 91, and cases there cited.

Of course, where the contract is expressly to indemnify against "all damages, costs and charges," which as sureties on a postmaster's bond the plaintiffs may have to pay by reason of such bond, actual loss or damage is necessary to give a right of action, because *payment* of damages, costs and charges is what the contract expressly agreed to indemnify against (*Jeffers* v. *Johnson,* 21 *N. J. L.* 73); and a contract to "save and keep harmless" from certain *existing* debts and liabilities, as in *Miller* v. *Fries,* 66 *Id.* 377, could not be construed as anything but a contract to indemnify against loss which might result from such debts and liabilities, because, if it had been intended to contract to *pay* an *existing* liability, simply because it was a liability and irrespective of whether it should or should not result in actual loss, the use of the words "save and keep harmless from" would have been obviously inappropriate.

But where, as here, the undertaking is to perform certain contracts of the plaintiff unless releases or modifications as

to price can be obtained, and in any event to indemnify the plaintiff against "liability" under the contracts if defendant does not fulfill them, we think the undertaking is to pay the liability, thus becoming fixed and not contingent, should it arise, and, consequently, that the right of action arises with the liability and the failure to forthwith discharge it.

This being so, we come to the somewhat difficult question in this particular case, namely, what is the measure of damages for a breach of such a contract to pay? If the obligation, which is the subject of the contract, is to pay a definite sum of money, that sum with interest is the measure; as where a man endorsed a promissory note as an accommodation for one who agreed to indemnify him from liability thereon, in which case he could, on the non-payment and protest of the note at maturity, sue on such contract and recover the amount of the note with interest from the date of dishonor, without first paying and taking up the note; or, if a continuing partner assumed on dissolution the payment of the partnership debts as they should mature, and agreed to indemnify the retiring partner against liability therefor, the latter is entitled to sue the continuing partner upon the debts falling due and not being paid, without first paying them himself, and the measure of damages is the amount of the unpaid debts with interest. *Sparkman* v. *Gove*, 44 N. J. L. 252, and cases therein cited; *Lathrop* v. *Atwood*, 21 Conn. 117.

Obviously, however, the recovery is not on the note in the one case nor on the partnership debts in the other, but in both cases is upon the breach of the contract to indemnify against liability. Theoretically, the plaintiff is entitled to recover the amount which will be required to enable him to discharge his liability himself, the defendant having failed to perform his contract so to do, and in fact if the defendant is also liable for the performance, as in the partnership debts case, he would doubtless be entitled to go into a court of equity and obtain a decree requiring the application of the money recovered from him to the extinguishment of the debts in question. *Loosemore* v. *Radford*, 9 M. & W. 657. But

the point is, that the recovery is not upon the liability insured against but upon the contract of insurance, and the fact remains that no matter whether the liability is or is not for what we call a fixed or determined amount, it is in fact a liability of the plaintiff to a third party—that is, to one not a party to the litigation—that is used to measure the damages for the breach of the contract to indemnify against it. Clearly, therefore, the jury in a suit for breach of the latter contract must pass upon and determine the amount of the liability of the plaintiff to this third party, because such liability has not in fact been previously judicially determined. This being the case, we can see no legal reason why such a jury may not just as well hear evidence establishing liability for failure to fill orders to manufacture and supply underwear and determining the amount of such liability, as to hear evidence establishing liability and determining the amount thereof for the payment of partnership debts. As to the amount of the liability it would be determined in the one case by ascertaining the difference by which the market price of the underwear at the time of breach exceeded the contract price, and in the other case by ascertaining the result of possibly a long series of debits and credits going to make up each partnership debt. The principle is the same in both cases, and we see no more difficulty in its practical application to the one case than to the other.

We think, therefore, that the learned trial judge applied the correct measure of damages in the case *sub judice.* Plaintiff having stipulated in his contract that his obligations should be performed by the defendant who should indemnify the plaintiff against liability for non-performance, and defendant having failed to perform, the plaintiff upon proof of his liability is entitled to recover the amount which he will have to pay in order to perform himself or to pay what the law substitutes for performance in case of a breach, viz., damages; and it would be a miscarriage of justice to require him to wait, possibly a period of six years, until suits were brought against him and judgments recovered, before he could be placed in a position to do justice to those who held

his obligations. Tardy justice is too often injustice under the best of circumstances, and unless absolutely necessary, in order to avoid violation of essential principles, the courts will refuse applications for delayed, instead of prompt, justice, based upon grounds of a technical rather than of a substantial nature.

It is further claimed that the court erred in fixing the time contemplated by the indemnity against liability contract for the filling of the orders as the time for calculating the difference between the market and the contract prices instead of the time fixed or contemplated by the orders themselves for performance. This would be true if the time fixed by the orders was of their essence and if it expired before the time fixed or contemplated by the contract and there was a difference in market price between the two dates. But where, as here, this is not the situation, but, on the contrary, the time contemplated by the orders as the time within which they should be filled is substantially the same as the time fixed by the contract as the time within which defendant should fill the orders, and the market price was the same during a period embracing both dates, the point is without substance.

Coming now to appellant's further complaints that evidence was improperly admitted tending to show that goods manufactured from raw material supplied by North under the first contract were sold to new customers instead of being used to fill the old orders as required by the contract; that defendant had suffered loss on the old orders it did fill; that North was finally put to the expense of replevying his raw material stock from defendant's factory; that defendant's overhead expenses was so heavy that the old orders could only be filled at a loss; that the old orders actually filled only amounted to two per cent. of the whole, and that the court refused to charge defendant's third and fifth requests relating respectively to opportunity for inspection and to unlawful demand, we find it impossible to say that there is anything before us as to any of these complaints requiring a reversal of the judgment in the foregoing case, or in the case which was tried with it, wherein the corporation was plaintiff and

North was defendant, and in which the jury also found in favor of North. In the latter case, it was claimed that North had failed to perform his part of the contract to sell to the corporation the raw material for the filling of the old orders, and had thereby, *inter alia,* prevented the corporation from making large profits out of those old orders. The two cases were tried together without any separation at all, and these alleged errors are assigned as reasons for reversal in each case. Under these circumstances, unless we are in a position to say that the evidence should not have been admitted, or the requests to charge refused in either case, we cannot reverse either case because thereof. We cannot so say in the first case because a rule to show cause was taken in that case (the one in which the corporation was defendant), with a reservation only of exceptions "wherein the jury was permitted to consider evidence and find a verdict on the alleged liability of the plaintiff under existing contracts with customers, without plaintiff establishing that he suffered damages or loss thereon or paid damages on such liability," and the Supreme Court, in disposing of this rule, said: "All objections argued, not so reserved, we find upon examination to be without merit." Of course, this finally disposed of everything in the first case not within the reservation, and it seems to us that all of the matters above enumerated fall within this description, viz., were in the first case and were not included in the reservation. They are, therefore, not before us.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 13.

*For reversal*—BERGEN, J. 1.