Hugo Kraus, now deceased, in his lifetime held a mortgage covering property on Adelina Place, North Bergen, New Jersey, which he foreclosed through his attorney, I. George *Page 121 
Koven. At the sheriff's sale Kraus bid in the property, and by an agreement with the complainant, the title thereto was taken in her name to be held by her for the benefit of Kraus. The complainant had no beneficial interest in the property. The sheriff conveyed the property described in the bill of complaint to the complainant (Exhibit C-1). The expenses incident to the foreclosure and conveyance, and the attorney's fees were all paid by Kraus; no money whatever was paid or advanced by the complainant. The complainant testified, in effect, that Kraus had marital difficulties by reason of which he would not take title to real estate, and, consequently requested her to hold the title to the premises in question for him. He agreed to pay any and all debts or liabilities that would, or might, arise out of the title. Koven corroborated the complainant's testimony as to the Kraus interest in the title and to the agreement that existed between them. The complainant, while holding the title, executed two bonds and mortgages covering the premises to secure loans aggregating $4,000. One bond and mortgage was given to Emilie Hearn on October 15th, 1932, for $2,000 (Exhibits C-3 andC-4); the second bond and mortgage was executed on December 1st, 1932, to Bertram Loadsman and Sarah E. Enquist for $2,000 (Exhibits C-6 and C-7). The loans were negotiated and obtained by C. Edward Mendles, now deceased, a realtor, at the request of, and for the benefit of, Kraus. Mendles appeared to be his real estate agent. The complainant said that she executed the loans at the request of Kraus who told her he needed the money to complete or finish buildings on the premises. Kraus assured the complainant that if she executed the bonds and mortgages he would indemnify and secure her against any resulting liabilities. The moneys raised on the two last aforesaid mortgages were used wholly for the benefit of Kraus. Complainant kept a detailed record of all rents, loans and other moneys received and disbursed in connection with the premises in a book (ExhibitC-2) entitled "Flo. J. Ackermann — account for Hugo Kraus properties in North Bergen, N.J." She opened a checking account in the Highland Trust Company, Union City, which she used only for the business transactions of Kraus (Exhibit *Page 122 C-8). At the request of Kraus, complainant executed a deed dated and acknowledged December 3d 1932, conveying to him the aforesaid properties (Exhibit C-11). The said C. Edward Mendles, as a notary public of New Jersey, took complainant's acknowledgment to the deed and after the execution thereof he retained it in a safe in his place of business. The complainant was employed by Mendles. She received no consideration for the transfer of the properties to Kraus.
Kraus died on May 4th, 1937, leaving a will by which he gave to each of his two daughters, Margaret Kiick and Anna Witteschein, an undivided one-third interest in his estate, and to the two children of a deceased son the remaining one-third interest between them. Abe D. Levenson and Margaret Kiick, decedent's daughter, the defendant herein, were named and qualified as executors of his estate.
On November 4th, 1938, there was a distribution of the assets of the estate and refunding bonds and releases were signed by the beneficiaries, to wit: Margaret Kiick, individually; Margaret Kiick, administratrix of the estate of Anna Witteschein, deceased (she having died before the distribution of the estate); William Kraus; and Helen C. Kraus, a minor, by her guardian Anna Kraus.
This suit is brought against the heirs of the Kraus estate. The defendants Loadsman and Enquist are made parties hereto because of their interest as second mortgagees.
In June or July of 1937 Abe D. Levenson, executor aforesaid, and attorney for the estate of Hugo Kraus, made a demand upon the complainant for all papers and moneys in her possession belonging to Hugo Kraus. She thereupon turned over to him the said unrecorded deed which she executed, conveying the said premises to Hugo Kraus, dated December 3d 1932 (Exhibit C-11); a detailed statement of the Kraus properties account (ExhibitC-10); and a check for $160.27 dated July 16th, 1937, payable to the order of Abe D. Levenson and Margaret Kiick, executors of the estate of Hugo Kraus, deceased (Exhibit C-9), which represents the balance in the aforesaid bank account. The deed (ExhibitC-11) was recorded by the executors on July 11th, 1937, in the *Page 123 
Hudson county register's office in book 1904 of deeds at page 346.
Charles Kiick, husband of Margaret Kiick aforesaid, testified that he and his wife from about the year 1932 knew that Hugo Kraus was in fact the owner of the properties held by the complainant.
Emilie Hearn foreclosed her mortgage and bought the premises for a nominal sum at the sheriff's sale and received therefor a deed, dated January 4th, 1939, and recorded on January 5th, 1939, in book 1935 of deeds at page 573 (Exhibit C-5). That deed, among other things, recites "on the 7th day of Nov. 1938 by a certain decree made in our Court of Chancery * * * in a certain cause therein depending, wherein Emilie Hearn is complainant, and Florence J. Ackermann, Margaret Kiick, Charles Kiick, her husband, Anna Witteschein, John Witteschein, her husband, Helen Kraus, an infant, William Kraus, Margaret Kiick and Abe D. Levenson, as executors and trustees of the Estate of Hugo Kraus, Jane Kraus * * * Bertram Loadsman and Sarah E. Enquist are defendants." The presumption arising from the quoted recital is that the defendants herein had, or were given, notice of the business relationship existing between this complainant and Hugo Kraus — it is evident they had notice of such relationship.
The lien of the second mortgage having been wiped out by the aforesaid foreclosure of the first mortgage and there being insufficient funds to pay any money on account of the second mortgage, the second mortgagees, Loadsman and Enquist, instituted an action in the Hudson County Circuit Court on their bond against complainant demanding $2,188.25, together with interest from October 26th, 1938, and costs. The complainant admits liability to the extent of $2,437.75 on the bond (Exhibit C-6), but she contends that she executed the bond for Kraus, the decedent, who in fact received and had the full benefit of the money paid by them. Mendles, who negotiated the loan for the mortgagees, had knowledge that the true owner of the property was not the complainant, but Hugo Kraus. Hartley v. Sandford,66 N.J. Law 40; 48 Atl. Rep. 1009; Joseph W. North Son, Inc., v.North, *Page 124 93 N.J. Eq. 70; 114 Atl. Rep. 411; affirmed, 93 N.J. Eq. 508;116 Atl. Rep. 871; North v. Joseph W. North Sons, Inc.,93 N.J. Law 438; 108 Atl. Rep. 244.
Counsel for the defendants objected to the complainant's testimony as to any agreement, or transaction, with Kraus to indemnify her, claiming that it was contrary to the provisions of the statute which precludes the exposition of a transaction between the complainant and a decedent, or where one of the parties to the suit sues or is sued in a representative capacity.R.S. 2:97-2. In this case the defendants are the children and grandchildren of the decedent; they are being sued in their individual capacities. No one here is being sued in a representative capacity. Burr v. Bloomsburg, 101 N.J. Eq. 615;138 Atl. Rep. 876; Hollingsworth v. Lederer, 125 N.J. Eq. 193;4 Atl. Rep. 2d 300. In support of his objection counsel cited the cases of Hunt v. Hendrickson, 97 N.J. Law 180;116 Atl. Rep. 496; Colfax v. Colfax, 32 N.J. Eq. 206; Joss v.Mohn, 55 N.J. Law 407; 26 Atl. Rep. 987; Lodge v. Hulings,64 N.J. Eq. 761; 53 Atl. Rep. 564; Kirkpatrick v. Kirkpatrick,106 N.J. Eq. 391; 151 Atl. Rep. 48. The situations in those cases are somewhat different than the facts in the instant suit. InLodge v. Hulings, supra, both parties were suing and being sued in a representative capacity. In Kirkpatrick v.Kirkpatrick, supra, the complainant sued as executor. InColfax v. Colfax, supra, the defendants were referred to as heirs; while in Joss v. Mohn, supra, and in Hunt v.Hendrickson, supra, the defendants were referred to as devisees.
Mr. Justice Reed, who wrote the opinion for the Supreme Court in Joss v. Mohn, supra, in an opinion in a later case, wherein he sat as Vice-Chancellor, Wyckoff v. Norton, 60 N.J. Eq. 474; 46 Atl. Rep. 614, explained the effect of his earlier opinion as follows:
"It is also objected that in this suit the complainant is incompetent to testify against the devisees of John. In support of this position the case of Joss v. Mohn, 26 Vr. 407, is vouched. Joss v. Mohn was an action brought against the heirs of a deceased debtor, under the statute, and it was held that for the purpose of that act the heir or devisee represented *Page 125 
the deceased debtor, in respect to the real property, just as the personal representative represented him in the respect to the personalty.
"In actions of this character the defendant must be described as `heir,' and he appears as such upon the record. In this suit, while the defendant is a devisee, yet he is not made the defendant as devisee, but because he happens to own the land upon which it is sought to re-establish the mortgage. The suit concerns property in whosoever hands it is, and the fact that the defendant happens to own it now, by force of his father's will, and so is a necessary party to the suit, does not disqualify the complainant. Hodge v. Coriell, 15 Vr. 456; S.C., 17 Vr. 354;Palmatier v. Tilton, 13 Stew. Eq. 555; Crimmins v. Crimmins,16 Stew. Eq. 86; Smith v. Smith, 23 Vr. 207, 210; Vreeland v.Vreeland, 8 Dick. Ch. Rep. 387."
In the case of Hunt v. Hendrickson, supra, Chief-Justice Gummere, after distinguishing the cases relied on by the complainant, Florence J. Ackermann, from those cases relied on by the defendant Margaret Kiick, and approving both lines of cases held, following Joss v. Mohn, supra, that a party who sues as heir or devisee, under the statute of heirs and devisees, and is described as such in the records, is barred from testifying with relation to transactions with or statements by testator.
The opinion of Chief-Justice Gummere in the Hunt Case does not support the contention of the defendants that such testimony cannot be here given by the complainant, Florence J. Ackermann, against Margaret Kiick and the other defendants who are being sued in their individual capacities and are so designated.
It is my opinion that the complainant is entitled to the relief she seeks. The beneficiaries aforesaid of the Kraus estate, in my opinion, are liable to the claims of the mortgagees, Loadsman and Enquist, to the extent of the moneys they received from the estate of Hugo Kraus. They, the beneficiaries, received gifts totaling $3,600 in cash from the Kraus estate as legatees under the Kraus will. Joseph W. North Son, Inc., v. North, supra;Chancellor of New Jersey v. Towell, 80 N.J. Eq. 223;82 Atl. Rep. 861. *Page 126 
Counsel for Margaret Kiick contends that the complainant in order to hold the beneficiaries of the estate of Hugo Kraus should have filed her claim with the executors, and urges that "the only remedy, if any, against the beneficiaries of the Kraus estate are on the refunding bonds and releases." He citesWootton v. Pollock, 120 N.J. Eq. 245; 184 Atl. Rep. 611, as sustaining his point. However, that opinion of the court was subsequently modified by Vice-Chancellor Sooy on a rehearing and is reported in 124 N.J. Eq. 167; 200 Atl. Rep. 748. It was later affirmed on appeal and is reported in 125 N.J. Eq. 432;6 Atl. Rep. 2d 216.
The beneficiaries of the Kraus estate having received the amounts due them from the executors, executed refunding bonds and releases. Those bonds and releases are given as a protection to the executors against claims that may arise after the estate is distributed. Carter v. Fidelity Union Trust Co., 120 N.J. Eq. 578; 187 Atl. Rep. 334.
I am satisfied that the executors of the estate of Hugo Kraus had knowledge of the trustee relationship that existed between the complainant and the decedent Kraus.
The complainant is entitled to a decree.
 SUPPLEMENTAL OPINION.
The opinion of this court in the above matter dated October 18th, 1940, inadvertently omitted to state the court's conclusions under the counter-claim of the defendants, Bertram Loadsman and Sarah E. Enquist; therefore, this supplemental opinion will supply the omission.
The counter-claimants allege that at the time of the execution of their mortgage for $2,000, which is dated December 1st, 1932, "it was represented by one, Edward Mendles, Agent of the complainant, Florence J. Ackermann, and the said Florence J. Ackermann, in order to induce the said Bertram Loadsman and Sarah E. Enquist to advance the said sum of $2,000 and accept therefor the said mortgage and a bond accompanying the same, that the said mortgage was a first lien upon the premises describe therein, which statement the said Edward Mendles, agent, and the complainant, knew was false." *Page 127 
The counter-claimants further allege that they were induced "by the fraudulent conduct and representation of said complainant, Florence J. Ackermann, and her agent, Edward Mendles, to advance the said sum of $2,000 and receive the said bond and mortgage accompanying the same, and only by reason of said fraudulent conduct and misrepresentations of the said Edward Mendles and Florence J. Ackermann, did the said defendants Bertram Loadsman and Sarah E. Enquist advance the said sum of $2,000 and accept the bond and mortgage herein above mentioned."
The evidence does not bear out the allegations of the counter-claimants. Their negotiations for the bond and mortgage, upon which they advanced the sum of $2,000 aforesaid, were conducted with the decedent, Hugo Kraus, through Edward Mendles, who was Kraus' real estate agent. The counter-claimants did not know the complainant and had no direct communication with her in the negotiations that led to the loan and to the preparation and execution of their bond and mortgage.
The testimony establishes the fact that the complainant executed the said bond and mortgage for Kraus, who received, and had the full benefit of, the moneys advanced by the counter-claimants.
The mortgage loan was effected for the counter-claimants through Mendles. He knew that the real, and true, owner of the property was not the complainant, but that it was the decedent, Hugo Kraus. Mendles made all the contacts. He represented both the borrowers and the lenders. Kraus wanted the loan and engaged Mendles to obtain it for him. The counter-claimants wanted to invest their cash and they gave it to Mendles for that purpose. The complainant did not appear in the preliminary negotiations.
Since the net assets of the estate of Hugo Kraus were distributed among the beneficiaries of his estate, those beneficiaries are liable to the counter-claimants to the extent of the moneys they have received from the executors of the estate. I shall advise an order to this effect. *Page 128