NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2270-12T4

GIVAUDAN FRAGRANCES
CORPORATION,

     Plaintiff-Appellant,

v.

AETNA CASUALTY & SURETY
COMPANY a/k/a TRAVELERS
CASUALTY AND SURETY
COMPANY, TRAVELERS
CASUALTY AND SURETY
COMPANY f/k/a AETNA
CASUALTY & SURETY COMPANY,
TRAVELERS PROPERTY
CASUALTY CORP. as the
successor-in-interest to
AETNA CASUALTY & SURETY
COMPANY AND TRAVELERS
CASUALTY AND SURETY COMPANY,
AMERICAN HOME ASSURANCE
COMPANY, THE CENTRAL
NATIONAL INSURANCE COMPANY
OF OMAHA, CENTURY INDEMNITY
COMPANY, CONTINENTAL
CASUALTY COMPANY, THE
CONTINENTAL INSURANCE
COMPANY in its own right and
as successor-in-interest to
BOSTON OLD COLONY INSURANCE
COMPANY, EVEREST REINSURANCE
COMPANY f/k/a PRUDENTIAL
REINSURANCE COMPANY, FEDERAL
INSURANCE COMPANY, HARTFORD
ACCIDENT & INDEMNITY COMPANY,
TIG INSURANCE COMPANY as
successor-in-interest to

APPROVED FOR PUBLICATION

August 12, 2015

APPELLATE DIVISION

INTERNATIONAL INSURANCE
COMPANY, LEXINGTON INSURANCE
COMPANY, MUNICH REINSURANCE
COMPANY f/k/a AMERICAN
RE-INSURANCE COMPANY,
NATIONAL SURETY CORPORATION,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, and
ALLSTATE INSURANCE COMPANY as
successor-in-interest to
NORTHBROOK EXCESS AND SURPLUS
INSURANCE COMPANY f/k/a
NORTHBROOK INSURANCE COMPANY,

     Defendants-Respondents,

and

HOME INSURANCE COMPANY, MIDLAND
INSURANCE COMPANY, THE NEW JERSEY
PROPERTY-LIABILITY GUARANTY
ASSOCIATION on behalf of MIDLAND
COMPANY in insolvency, MISSION
INSURANCE COMPANY, THE NEW JERSEY
PROPERTY-LIABILITY GUARANTY
ASSOCIATION on behalf of MISSION
INSURANCE COMPANY in insolvency,
and NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

     Defendants.

_____

        Argued December 10, 2014 — Decided August 12, 2015

        Before Judges Fuentes, Ashrafi and O'Connor.

        On appeal from the Superior Court of New
        Jersey, Law Division, Morris County, Docket
        No. L-592-09.

        Robin L. Cohen (Kasowitz, Benson, Torres &
        Friedman, L.L.P.) of the New York bar,
        admitted pro hac vice, argued the cause for
        appellant (The Law Office of Robert B.

A-2270-12T4

Woodruff, P.C., and Ms. Cohen, attorneys;
Mr. Woodruff, Ms. Cohen and Kenneth H.
Frenchman (Kasowitz, Benson, Torres &
Friedman, L.L.P.) of the New York bar,
admitted pro hac vice, on the briefs).

Daren S. McNally argued the cause for
respondent Travelers Casualty and Surety
Company (Clyde & Co. U.S. L.L.P., attorneys;
Mr. McNally, Barbara M. Almeida and Meghan
C. Goodwin, on the brief).

Patrick F. Hofer (Troutman Sanders L.L.P.)
of the District of Columbia and Virginia
bars, admitted pro hac vice, argued the
cause for respondents Continental Casualty
Company and the Continental Insurance
Company (Coughlin Duffy L.L.P. and Mr.
Hofer, attorneys; Suzanne C. Midlige,
Christopher S. Franges and Mr. Hofer, on the
briefs).

Tanya M. Mascarich argued the cause for
respondent Allstate Insurance Company
(Windels Marx Lane & Mittendorf, L.L.P.,
attorneys; Ms. Mascarich and Stefano V.
Calogero, on the brief).

LeClairRyan, attorneys for respondents
American Home Assurance Company, and
National Union Fire Insurance Company of
Pittsburgh (Gregory S. Thomas, on the
brief).

Siegal & Park, attorneys for respondents ACE
Property & Casualty Company, Century
Indemnity Company and TIG Insurance Company
(Martin F. Siegal and Seth G. Park, on the
brief).

Hardin, Kundla, McKeon & Poletto, attorneys
for respondent Everest Reinsurance Company
(John S. Favate, on the brief).

A-2270-12T4

Rivkin Radler L.L.P., attorneys for respondent Federal Insurance Company (Brian R. Ade, on the brief).

Graham Curtin, P.A., attorneys for respondent Hartford Accident and Indemnity Company (Dennis P. Monaghan, on the brief).

Smith Stratton Wise Heher & Brennan, L.L.P., attorneys for respondent Munich Reinsurance America, Inc. (William E. McGrath, Jr., on the brief).

Jeffrey N. German, attorney for respondent National Surety Corporation.

The opinion of the court was delivered by

O'CONNOR, J.A.D.

Plaintiff Givaudan Fragrances Corporation appeals the December 21, 2012 orders denying its motion for partial summary judgment, granting defendants' motion for summary judgment, and dismissing its complaint. After carefully reviewing the record, the briefs, and the controlling legal principles, we reverse.

I

The primary issue in this appeal is whether plaintiff may be assigned the rights under insurance policies issued years earlier to one of the assignor's predecessor corporations. A brief overview of plaintiff's corporate history is necessary to put the issues in perspective. On February 28, 1924, Burton T. Bush, Inc., was incorporated. This company manufactured flavors, fragrances, and other chemicals in Clifton and other

locations.  On September 15, 1965, the company was renamed the Givaudan Corporation.

During the 1960s and 1980s, the Givaudan Corporation purchased insurance policies from defendants.  These policies, which identified the Givaudan Corporation as the named insured, provided primary, umbrella, and excess coverage.  The policy periods ranged from November 16, 1964 to January 1, 1986.

In 1987, the New Jersey Department of Environmental Protection (DEP) determined that the Givaudan Corporation's manufacturing activities contaminated the soils and groundwater at the Clifton site with hazardous materials.  The Givaudan Corporation and the DEP entered into various administrative consent orders in 1987 and 1988 directing, among other things, that the company remediate the damage caused by the contamination and pay certain costs.  These administrative consent orders stated they were binding upon not only the Givaudan Corporation, but also its successors and assigns.

In the 1990s, a series of very complex corporate mergers, transfers, and re-formations began for reasons that are neither fully explained in our record nor ultimately relevant to the issues before us.  First, in the 1990s the Givaudan Corporation merged with another company and became known as the Givaudan Roure Corporation.  Separate and apart from that merger, in

1997, the Givaudan Roure Fragrance Corporation was formed.

Also in 1997, the Givaudan Roure Corporation decided to close its plant in Clifton. As part of its obligations under the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 to -14, the Givaudan Roure Corporation and the DEP entered into a remediation agreement, effective January 1, 1998. That agreement required both the Givaudan Roure Corporation and the Givaudan Roure Fragrance Corporation to continue their efforts to fulfill the terms of the administrative consent orders and to maintain a remediation funding source. The facility was ultimately closed in July 1998.

On January 1, 1998, the Givaudan Roure Corporation transferred the assets and liabilities of its fragrances division to the Givaudan Roure Fragrance Corporation. The liabilities the latter corporation assumed did not exclude Givaudan Roure Corporation's environmental liabilities. None of the assets transferred included the insurance policies issued by defendants to the Givaudan Corporation.

For reasons not pertinent here, in 1998 the Givaudan Roure Fragrance Corporation changed its name and, in 2000, merged into the newly formed Givaudan Fragrances Corporation. Plaintiff is the Givaudan Fragrances Corporation. It is not disputed that the Givaudan Fragrances Corporation (Fragrances) is the

6

successor-by-merger to the Givaudan Roure Fragrance Corporation.

In the interim, in January 1998, the Givaudan Roure Corporation merged into what is now known as the Givaudan Flavors Corporation (Flavors). It is undisputed Flavors is the successor—by-merger to the Givaudan Corporation. It is also undisputed that Fragrances and Flavors are affiliated companies, see N.J.S.A. 14A:10A-3, and each is owned by the same parent company, Givaudan Flavors and Fragrances, Inc.

In August 2004, the Environmental Protection Agency notified Fragrances that it was potentially liable under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C.A. §§ 9601-9675, for hazardous discharges that had emanated from the Clifton site. In January 2006, the DEP also filed suit against Fragrances for damage caused by discharges from the Clifton site.

In 2005, the DEP commenced an action against several companies that had operated sites within a contaminated area known as the Newark Bay Complex. On February 4, 2009, two of the defendants in the DEP action, Maxus Energy Corporation and Tierra Solution, Inc., filed third-party contribution claims against more than 300 entities that had also conducted activities in the area. Fragrances was among those third-party defendants.

A-2270-12T4

Fragrances claimed it was an insured under the insurance policies defendants had issued to the Givaudan Corporation between 1964 and 1986. Defendants disputed that claim and contended Fragrances was not an insured under any of the policies. On February 20, 2009, Fragrances filed the within declaratory judgment action. Fragrances sought a ruling that it was an insured under defendants' policies and that they were obligated to defend and indemnify it in the third-party contribution action and the related EPA and DEP matters.

On March 25, 2010, Flavors assigned to Fragrances all of Flavor's insurance rights under various policies defendants had issued to the Givaudan Corporation from November 16, 1964 to January 1, 1986. The assignment states that Flavors

> sells, transfers, assigns, conveys, grants, sets over and delivers to Givaudan Fragrances Corporation ("Assignee") all rights to insurance coverage under the insurance policies described on Schedule A hereto for all occurrences, accidents, events, loss, injuries, damages, and liabilities arising out of the conduct of the business of Assignor, Assignee or any affiliate or predecessor of Assignor or Assignee prior to January 1, 1998, and relating to liabilities and/or assets transferred from Assignor to Assignee on or about January 1, 1998, including but not limited to any environmental liabilities[.]

Defendants refused to recognize the assignment on the ground their respective policies prohibited policy assignments

without the insurer's consent, and none of the insurers had consented to the assignment. Defendants also contended that Fragrances was not included within the definition of insured in any of the policies.

Fragrances maintained that the assignment was valid and binding upon defendants. Fragrances also argued that it was an insured under those policies that defined the named insured as "Givaudan Corporation and any subsidiary or affiliated companies which may now exist or hereafter be created." Fragrances contended it was an affiliate of Flavors (the successor-by-merger to the Givaudan Corporation) because Fragrance and Flavors were both owned and controlled by the same parent, Givaudan Flavors and Fragrances, Inc.

Fragrances moved for partial summary judgment and defendants cross-moved for summary judgment. On December 21, 2012, the trial court denied Fragrances's motion, granted defendants' motions, and dismissed Fragrances's complaint with prejudice. The court found the assignment invalid because there was assignment of more than

> a single claim and single insurance rights.
> . . . [T]his assignment is not simply [an]
> assignment of a particular claim or even
> limited claim -- insurance claims. It seems
> to be a rather global assignment. And I
> think there's no other way that I can read
> that assignment, even though it doesn't say
> it's the assignment of a policy. For all

A-2270-12T4

> intents and purposes, it is [an] assignment
> of policies.
>
> . . . It's simply not the assignment of a
> [chose in] action.

The trial court also found that Fragrances was not an affiliate of Givaudan Corporation and therefore not an insured, even though the definition of an insured under most of the policies included "affiliated companies which may now exist or hereafter be created."  The court interpreted this language to mean that only those affiliates that were created during a policy period could be an insured.  The trial court also indicated that Fragrances was not an insured affiliate because of

> the corporate structure involved.  What was
> involved were some very convoluted changes
> and acquisitions after the last policy
> period. . . . [Y]ou do have acquisitions of
> different businesses and after the last
> policy period, and eventually a split up
> into two corporations, albeit under the same
> umbrella.

## II

Our review of a trial court's summary judgment order is de novo, and an appellate court applies the same legal standard as the trial court.  Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing W.J.A. v. D.A., 210 N.J. 229, 237-38 (2012); Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 330 (2010)).  A motion for summary judgment should be granted only when the moving

party establishes the absence of any genuine issue as to a material fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995). If there is no genuine issue of material fact, a reviewing court decides whether the trial court's ruling on the law was correct. Prudential Prop. Ins. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

Fragrances contends the trial court erred when it concluded the assignment from Flavors to Fragrances was invalid.

It is not disputed that defendants' policies were "occurrence" policies. In these kinds of policies, the peril insured is the occurrence itself. Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 310 (1985) (citing S. Kroll, "The Professional Liability Policy 'Claims Made'" 13 Forum 842, 843 (1978)). "Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter." Id. at 310-11 (quoting S. Kroll, supra, 13 Forum at 843).

It is also not disputed that the subject policies require the insurer's consent in order for the insured to assign the policy to a third person. See also Kase v. Hartford Fire Ins.

Co., 58 N.J.L. 34, 36 (Sup. Ct. 1895) (holding that an insurance policy cannot be transferred to a third person without the insurer's consent).  However, once a loss occurs, an insured's claim under a policy may be assigned without the insurer's consent.  Flint Frozen Foods v. Firemen's Ins. Co., 12 N.J. Super. 396, 399-400 (Law Div. 1951), rev'd on other grounds, 8 N.J. 606 (1952).  As elucidated by the trial court in Flint, after a loss covered by a policy has happened,

> "the prohibition of assignments without the consent of the insurer [ceases].  Its liability [has] become fixed, and like any other chose in action [is] assignable regardless of the conditions of the policy in question.  This is settled by the great weight of authority.  In Wood on Fire Insurance, vol. 2, par. 361 the doctrine is stated thus: . . . '[If there has been an assignment following a loss,] the insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it may be transferred or assigned like any other debt.'"
>
> [Flint, supra, 12 N.J. Super. at 400-01, (quoting Ocean Accident and Guarantee Co. v. Southwestern Bell Tel. Co., 100 F.2d 441, 445 (8th Cir.) (internal citation omitted), cert. denied, 306 U.S. 658, 59 S. Ct. 775, 83 L. Ed. 1056 (1939)).]

"This reasoning has been approved by most insurance law reporters and commentators."  Elat, Inc. v. Aetna Cas. and Sur. Co., 280 N.J. Super. 62, 67 (App. Div. 1995) (citing 16 George J. Couch, Couch Cyclopedia of Insurance Law § 63.40 (rev. 2d ed.

12                                                    A-2270-12T4

1983); 5A John A. Appleman, Insurance Law and Practice § 3458 (rev. ed. 1970)).

The purpose behind a no-assignment clause is to protect the insurer from having to provide coverage for a risk different from what the insurer had intended. Ibid.; AMB Prop., LP v. Penn Am. Ins. Co., 418 N.J. Super. 441, 455 (App. Div. 2011). A no-assignment clause guards an insurer against any unforeseen exposure that may result from the unauthorized assignment of a policy before a loss. Insurers provide policies of insurance to those individuals and entities that insurers have determined are acceptable risks. If an insured assigns the policy to a third party without the insurer's consent, the insured may cause the insurer to bear a risk the insurer never agreed to accept and never would have accepted. See generally Wehr Constructors, Inc. v. Assur. Co. of Am., 384 S.W.3d 680, 683 (Ky. 2012).

But if there has been an assignment of the right to collect or to enforce the right to proceed under a policy after a loss has occurred, the insurer's risk is the same because the liability of the insurer becomes fixed at the time of the loss. Thereafter, the insurer's risk is not increased merely because there has been a change in the identity of the party to whom a claim is to be paid. Ibid.; see also Elat, supra, 280 N.J. Super. at 67 ("Assignment of the right to collect or to enforce

the right to proceed under a . . . liability policy does not alter . . . the obligations the insurer accepted under the policy . . . [but] only changes the identity of the entity enforcing the insurer's obligation to insure the same risk."); see also 17 Williston on Contracts § 49:126 (4th ed. 2015) (noting that an anti-assignment clause does not limit the policyholder's power to make an assignment of the rights under the policy after a loss has occurred).

Moreover, once the insurer's liability has become fixed due to a loss, an assignment of rights to collect under an insurance policy is not a transfer of the actual policy but a transfer of the right to a claim of money. Wehr, supra, 384 S.W.3d at 683 (citing Conrad Brothers v. John Deere Ins. Co., 640 N.W.2d 231, 237-38 (Iowa 2001)). It is a transfer of a chose in action as opposed to a transfer of an actual policy. 2 Couch on Insurance § 34:25 (3d ed. 2011). "'[T]he insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it may be transferred or assigned like any other debt.'" Elat, supra, 280 N.J. Super. at 66-67 (quoting Flint, supra, 12 N.J. Super. at 400-01).

Here, Flavors assigned to Fragrances all of its rights to the coverage provided by specific insurance policies, all of which were clearly identified in a schedule attached to the

assigning document.  The schedule shows that the last of these policies expired on January 1, 1986.  If any loss occurred during the policy period of any of these policies, the loss clearly occurred long before the assignment in 2010.  Therefore, Flavors did not require the insurers' consent to assign its rights under the policies.  Further, the assignment of the rights to the policies specified in the assigning document could not have increased the risk to any defendant insurer because all losses occurred before the assignment.

Defendants contend an insurer's contractual duty to honor its obligations under a policy cannot be triggered until a judgment has been recovered against an insured.  There is no merit to this argument.  Defendants' policies are liability and not indemnity policies.  Although indemnity policies require proof of payment by the insured as a condition precedent to recovering from an insurer, see Johnson v. Johnson, 92 N.J. Super. 457, 462 (App. Div. 1966); North v. Joseph W. North & Son, 93 N.J.L. 438, 441 (E. & A. 1919), liability policies do not.  "Where the agreement provides indemnification for liability, the cause of action arises with liability and the [insured] is entitled to recover the amount necessary to enable it to discharge the liability itself."  First Indem. of Am. Ins. Co. v. Kemenash, 328 N.J. Super. 64, 72-73 (App. Div. 2000).

Further, the fact that some claims may not have been asserted by those allegedly harmed by the Givaudan Corporation's actions during a policy period of one of the subject policies does not affect the validity of the assignment. Defendants' obligation to provide coverage to the party deemed to be an insured under the policies arose at the time of the loss. Although the precise amount of defendants' liability may not be known, defendants' obligation to insure the risk in accordance with their respective policies was not altered by the assignment. As occurrence-based policies,

> they provide coverage for occurrences during the coverage period, no matter when the claims for those occurrences might be pursued. They provide the insured with protection against future claims by third parties for covered losses incurred by the third parties as a result of the insured's actions during the coverage period. Defendants could expect to provide the contracted defense and liability coverage, i.e., pay for the losses, possibly many years after the policy expired. Once a covered loss has occurred, the insured's assignment of its right to liability coverage or a defense relating to those losses does not require consent from the insurer because the assignment is essentially the assignment of payment of a claim already accrued, a claim consisting of the right to a defense and indemnification.
>
> [Ill. Tool Works, Inc. v. Commerce & Indus. Ins. Co., 962 N.E.2d 1042, 1053 (Ill. App. Ct. 1st Dist. 2011).]

Defendants argue that the assignment obligates them to provide coverage for both Fragrances and Flavors and thus improperly increases their risk. The assignment itself disproves this premise. Flavors assigned to Fragrances <u>all</u> of its rights to insurance coverage under the specific insurance policies listed in the schedule for all occurrences, accidents, events, losses, injuries, damages, and liabilities arising out of the conduct of Flavors, Fragrances or an affiliate or predecessor of Flavors or Fragrances before January 1, 1998.

Defendants also claim the assignment is too broad to be enforceable. We disagree. The assignment is neither so broad nor so non-specific as to render the rights conveyed unidentifiable. The schedule accompanying the assignment identifies the policies that are the subject of the assignment by policy number, insurer, and the dates of the policy period for each policy. It is clear what was assigned from Flavors to Fragrances.

We have carefully considered defendants' remaining arguments concerning the validity of the assignment and conclude they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:2:11-3(e)(1)(E). Further, because of our disposition on this issue, we need not address whether Fragrances is an affiliate of the Givaudan Corporation.

A-2270-12T4

The provisions in the December 21, 2012 orders granting defendants summary judgment and dismissing the complaint are reversed. The provisions denying plaintiff partial summary judgment are vacated, and partial summary judgment is granted to plaintiff, which shall have the rights assigned to it from Flavors in the March 25, 2010 assignment.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2270-12T4